In the Matter of PATTI ANN H., Respondent, v NEW YORK
MEDICAL COLLEGE, Appellant.

Second Department, August 2, 1982

APPEARANCES OF COUNSEL

*Kelley Drye & Warren (Paul F. Doyle, Sarah L. Reid* and
*Robert A. Horowitz* of counsel), for appellant.

*Hockert & Flamm (Leonard N. Flamm* of counsel), for
respondent.

**OPINION OF THE COURT**

MANGANO, J. P.

In this proceeding, petitioner, who was a freshman medi-
cal student at the New York Medical College for the
academic year 1978-1979, sought review and annulment of
the college's determination to expel and permanently dis-
miss her as an enrolled medical student because she had

failed four of her six freshman courses. Essentially, petitioner claimed that the action of the college was arbitrary and capricious because, in reaching its final decision to dismiss, it did not afford her an adequate hearing concerning her academic performance. She also claimed that the decision was arbitrary, capricious and an abuse of discretion because it ran counter to the accepted practice, precedent and custom of the college to grant students with four or five failures the opportunity to repeat the academic year, and failed to treat petitioner equally with other similarly situated students. The relief requested was readmission to the college as a freshman medical student for the academic year 1980-1981, or, in the alternative, a rehearing by the appropriate college tribunal on the issue of her academic performance and reconsideration of her dismissal.

After a nonjury trial, Special Term granted the petition, annulled the determination dismissing petitioner as a medical student, and directed that she be readmitted as a freshman student for the academic year 1982-1983.

We reverse.

The Board of Regents of the State University of New York was established, *inter alia,* to encourage and promote education and generally to supervise both public and private educational institutions within the State (see Education Law, §§ 201, 202, 210, 214-216; *Moore v Board of Regents of Univ. of State of N. Y.,* 44 NY2d 593). The Commissioner of Education is the chief executive officer of the State Department of Education and of the Board of Regents (Education Law, § 305, subd 1). "He shall enforce all general and special laws relating to the educational system of the state and execute all educational policies determined upon by the board of regents [and] * * * shall have general supervision over all schools and institutions which are subject to the provisions of [the Education Law]" (Education Law, § 305, subds 1, 2). Pursuant to the general powers and duties of the commissioner, he may, with the approval of the Board of Regents, adopt and prescribe rules and regulations relating to education (Education Law, §§ 207, 305). He shall also "exercise the judicial functions conferred by law upon the commissioner of education and,

subject to rules of the regents, [shall] make, execute and issue in the name of the department such determinations, decisions, orders, notices and certificates as may be required for the exercise and performance of the functions, powers and duties conferred or imposed upon the department" (Education Law, § 301). By reason of the commissioner's judicial, or quasi-judicial, authority:

"Any party conceiving himself aggrieved may appeal by petition to the commissioner of education who is hereby authorized and required to examine and decide the same; and the commissioner of education may also institute such proceedings as are authorized under this article. The petition may be made in consequence of any action * * *

"By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools." (Education Law, § 310, subd 7; see 8 NYCRR Parts 275, 276.)

By regulation, the Commissioner of Education requires the registration of every curriculum creditable toward a degree offered by institutions of higher education and every curriculum leading to licensure in a profession (8 NYCRR 52.1 [a] [1] [2]). By further regulation, the commissioner has established standards for the registration of graduate school curricula, including programs designed to fulfill in part the requirements for licensure in the practice of medicine (8 NYCRR 52.2 [c] [11]). These standards mandate in 8 NYCRR 52.2 (e) that:

"(1) Responsibility for the administration of institutional policies and programs shall be clearly established.

"(2) Within the authority of its governing board, the institution shall provide that overall educational policy and its implementation are the responsibility of the institution's faculty and academic officers. Other appropriate segments of the institutional community may share in this responsibility in accordance with the norms developed by each institution.

"(3) The institution shall establish, publish and enforce explicit policies with respect to * * *.

"(iii) requirements for admission of students to the institution and to specific curricula, requirements for residence, graduation, awarding of credit, degrees or other credentials, grading, standards of progress, payment of fees of any nature, refunds, withdrawals, standards of conduct, disciplinary measures and redress of grievances.

"(4) Academic policies applicable to each course, including learning objectives and methods of assessing student achievement, shall be made explicit by the instructor at the beginning of each term."

In the case at bar, all of petitioner's claims against the medical college form, in essence, a complaint that the college has been arbitrary and capricious and has abused its discretion in implementing the institution's educational policy, and, specifically, in enforcing policies with respect to grading, the awarding of credit and standards of progress. In effect, petitioner's challenge to her dismissal from the medical college constitutes a claim that she was aggrieved by an academic decision of the college involving the implementation of standards for grading, accreditation and promotion — standards statutorily subject to the supervision of the Commissioner of Education and explicitly regulated by rules and regulations of the commissioner. Consequently, as a person conceiving herself aggrieved by such an academic decision, petitioner has an administrative remedy in the appeal process established by section 310 of the Education Law and 8 NYCRR Parts 275 and 276. Whether this would be her exclusive remedy requiring dismissal of the instant proceeding under the doctrine of exhaustion of administrative remedies (see, generally, 3 Davis, Administrative Law Treatise [1st ed], ch 20) we do not determine. We recognize that in cases where the issue involves the professional judgment and discretion of educators and a statutory or constitutional provision is not the basis of the dispute and discrete issues of law are not present, direct review by the courts of the academic policy decisions of educators and educational institutions will not be proper. (See *Matter of Walker v Board of Educ.*, 78 AD2d 982.) Nevertheless, it has been said that although matters involving academic standards generally rest upon the subjective judgment of professional educators, and courts are

reluctant to impose the strictures of traditional legal rules, such matters are subject to judicial scrutiny, at least to the extent of reviewing whether an institution acted in good faith or its action was arbitrary or irrational. (*Tedeschi v Wagner Coll.*, 49 NY2d 652; see *Matter of Carr v St. John's Univ., N.Y.*, 17 AD2d 632.) Thus, since the doctrine of exhaustion of administrative remedies only applies where a claim is cognizable in the first instance by an administrative agency alone, requiring judicial interference to be withheld until the administrative process has run its course (*United States v Western Pacific R.R. Co.*, 352 US 59, 63; *Guglielmo v Long Is. Light. Co.*, 83 AD2d 481, 483), it would appear, though we do not decide, that Special Term was not prevented by this administrative law doctrine from entertaining the instant petition on its merits. We are convinced, however, that under another well-settled rule of administrative law, which finds expression in the doctrine of "primary jurisdiction" (see, generally, 3 Davis, Administrative Law Treatise [1st ed], ch 19), Special Term should have refrained from exercising jurisdiction in this matter until after petitioner had sought review by the Commissioner of Education of her dismissal from the medical college. We reach this conclusion based on our understanding that "primary jurisdiction" applies even if a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. (*United States v Western Pacific R.R. Co., supra,* p 64; *Guglielmo v Long Is. Light. Co., supra,* pp 483-484; see *Fusco v New York Prop. Underwriters Assoc.*, 70 AD2d 895.)

"Our courts * * * have * * * long recognized that the management of educational institutions rests on those with special skills and sensitivities." (*Matter of Gray v Canisius Coll. of Buffalo*, 76 AD2d 30, 33.) For this reason, courts should "only rarely assume academic oversight, except with the greatest caution and restraint" (*Matter of Pace Coll. v Commission on Human Rights of City of N.Y.,*

38 NY2d 28, 38). This restraint should be even greater when it is realized that the Legislature has established an administrative agency (i.e., the Board of Regents through the Commissioner of Education) with the very duty, power and authority of academic oversight that the petitioner seeks to have the courts exercise in this matter (Education Law, §§ 201, 301, 305, 310).

Under the doctrine of primary jurisdiction, therefore, and the judicial restraint that it dictates, Special Term should have refrained from entertaining petitioner's application in this article 78 proceeding on its merits. The proceeding should have been dismissed and petitioner instructed to seek review by the Commissioner of Education of the medical college's determination. In that way, the court would have properly withheld interfering in an area placed within the special competence of the Commissioner of Education without denying petitioner a remedy to have reviewed the decision by which she was allegedly aggrieved. Appeal to the commissioner, though precluded as of right by the time limitation of 8 NYCRR 275.16, was still available within the discretion of the commissioner, and is still available within his discretion at this time (8 NYCRR 275.16).

Notwithstanding our conclusion that the proceeding should have been dismissed under the doctrine of primary jurisdiction and in the exercise of judicial restraint, we are also convinced by a review of the record on appeal that Special Term erred in finding that petitioner's dismissal as a medical student constituted an abuse of discretion and lack of good faith on the part of the medical college. The college's decision did not demonstrate bad faith, arbitrariness, or irrationality. It was based on a proper and legitimate, though subjective, judgment rendered within a professional and academic milieu. (See *Matter of Pace Coll. v Commission on Human Rights of City of N. Y.,* 38 NY2d 28, 38, *supra.*) It appears that the college acted within its jurisdiction, not arbitrarily but in the exercise of an honest discretion based on facts within its knowledge that justified the exercise of its discretionary judgment. Thus, it was improper for Special Term to have reviewed such an exercise of discretion. (See *Matter of Carr v St. John's Univ., N. Y.,* 17 AD2d 632, 634, *supra.*)

Accordingly, the judgment appealed from should be reversed and the proceeding dismissed.

GIBBONS, O'CONNOR and THOMPSON, JJ., concur.

Judgment of the Supreme Court, Westchester County, dated January 20, 1982, reversed, on the law, without costs or disbursements, and proceeding dismissed.

Appeals from three orders of the same court, dated November 28, 1980, April 14, 1981, and December 2, 1981, respectively, dismissed, without costs or disbursements (see CPLR 5701, subd [b], par 1; see, also, *Matter of Aho,* 39 NY2d 241, 249).

Appeal from an order of the same court dated April 14, 1982 dismissed as academic, without costs or disbursements, in view of the determination on the appeal from the judgment.