INTERFAITH MEDICAL CENTER, Respondent-Appellant, v DAVID C. SABISTON, JR., as Chairman of the Accreditation Council for Graduate Medical Education, Appellant-Respondent.

Second Department, April 11, 1988

### APPEARANCES OF COUNSEL

*Wildman, Harrold, Allen & Dixon (Douglas R. Carlson, Thomas E. Patterson* and *Sharon R. Gromer* of counsel), and *LeBoeuf, Lamb, Leiby & MacRae (Jay G. Safer* of counsel), for appellant-respondent.

*Hayt, Hayt & Landau (Roy Broudny, P. C., Richard F. Minicucci, P. C., Andrew B. Roth, P. C.,* and *Ralph Pernick* of counsel), for respondent-appellant.

*Council on Postsecondary Accreditation, pro se, amicus curiae.*

*Federation of State Medical Boards of the United States, Inc., pro se, amicus curiae.*

### OPINION OF THE COURT

SULLIVAN, J.

In this action, the Interfaith Medical Center (hereinafter IMC) challenges the determination of the Accreditation Council for Graduate Medical Education (hereinafter ACGME) to withdraw accreditation from IMC's residency program in surgery. The Supreme Court granted IMC's motion for a preliminary injunction prohibiting the defendant from taking any action to effectuate the withdrawal of accreditation of IMC's surgical program, and denied ACGME's cross motion to dismiss the complaint *(see,* 133 Misc 2d 308).

## I

Medical residency programs in teaching hospitals are a vital form of postgraduate medical education. They constitute the transitional phase between the pure academics of medical school and the realities of medical practice. They are designed to provide the medical school graduate with hands-on experience in the care and treatment of the ill and injured, under supervision, and with an increasing degree of responsibility. The object of these programs is to ensure that those who successfully complete them have the requisite skill and training to practice medicine.

As an educational component of a licensed profession, medi-

cal residency programs are within the purview of the Board of Regents and the Commissioner of Education (NY Const, art V, § 4; art XI, § 2; Education Law §§ 207, 6506, 6507). Pursuant to his statutory authority to regulate professions, the Commissioner has promulgated rules relative to the educational requirements for a license to practice medicine which provide in part: "The department, in its discretion, may accept in satisfaction of a professional education requirement, the completion of an approved or registered program or a program accredited by a professional accreditation organization acceptable to the department" (8 NYCRR 59.2).

Furthermore, in 8 NYCRR 60.3, the Commissioner has required that applicants for a license to practice medicine, who are graduates of medical schools registered by the New York State Department of Education or accredited by an organization acceptable to the Department, must have completed at least one year of hospital training acceptable to the Department. Applicants, after July 1, 1981, who have graduated from medical schools that are not registered or accredited by the Department must have completed at least three years of postgraduate training approved by ACGME.

Furthermore, the Commissioner of Health, in regulating medical facilities, has provided in 10 NYCRR 405.7 (c):

"Patient care services shall be provided by a New York State licensed physician or:

"(1) a physician in a residency program accredited by the Accreditation Council on Graduate Medical Education or the American Osteopathic Association, their predecessors or successors, or an equivalent accrediting agency acceptable to the State Education Department".

It is obvious, from a review of these regulatory provisions, that residency programs are a critical component of medical education and that the Commissioner of Education and the Board of Regents, in the final analysis, have the responsibility of seeing that these programs are adequate and that a certificate of completion of such a residency program is a meaningful credential (see, Matter of Board of Educ. v Ambach, 90 AD2d 227, 232, affd 60 NY2d 758, cert denied 465 US 1101).

## II

ACGME is a nonprofit, private association which surveys, evaluates and accredits medical and surgical residency pro-

grams throughout the United States.* It carries out its work through 24 Residency Review Committees (hereinafter RRC), one for each of the medical specialties. The RRC for General Surgery consists of 12 surgeons appointed by the American Board of Surgery, the American Medical Association Council on Medical Education and the American College of Surgeons.

Each residency program is judged according to "general requirements", which are applicable to all residency programs, and "Special Requirements", which are prepared for each specialty by the appropriate RRC. These standards, the "general requirements" and the 24 "special requirements", are published as "The Essentials of Accredited Residencies in Graduate Medical Education".

The evaluation process consists of the submission by the sponsor of the residency program of a lengthy and detailed report, supported by numerous tables and compilations. In addition, an on-site inspection is usually made by a surveyor designated by the RRC who attempts to verify some of the submitted material and who also issues a written report to the RRC. These matters are reviewed by the RRC which can then recommend full accreditation, probation or withdrawal of accreditation.

Following the preliminary determination by the RRC, a program found to be deficient may request reconsideration by the RRC and may submit further material to establish that it is not deficient as to any of the stated general or special requirements. If, upon reconsideration, the RRC still recommends withdrawal of accreditation, the program may request further review by a board of appeals consisting of three directors of accredited residency programs in the specialty involved. The program chooses one, the RRC chooses one and they in turn select the third. In addition to reviewing all of the submitted material, the board of appeals conducts a hearing at which the program, represented by counsel, may submit further evidence, including witnesses, to indicate that it is in substantial compliance with the general and special requirements. The decision of the board of appeals is then

---

* There are five organizational members of ACGME: American Board of Medical Specialties, the American Hospital Association, the Association of American Medical Colleges, the American Medical Association and the Council of Medical Specialty Societies. Each of these organizations appoints four representatives to ACGME. In addition, there is one public representative, one from the Federal Government and one representing hospital house staff.

submitted to ACGME for a final determination as to the status of the program.

## III

It is against this background that we now consider the facts in this case. IMC was formed January 1, 1983, by the merger of two hospitals, Jewish Hospital and Medical Center of Brooklyn (hereinafter Jewish Hospital) and St. John's Episcopal Hospital of Brooklyn (hereinafter St. John's). A residency program in general surgery had been established at Jewish Hospital in the late 1940's and had been fully accredited. In 1980, pursuant to the regulations of ACGME, the program was reevaluated for a further five-year accreditation. As a result of this review, the RRC found four deficiencies and recommended that the program be placed on probation. The program sought reconsideration and the recommendation of probation was confirmed.

In April 1981 the program was again surveyed and probation continued with a finding of three deficiencies. Upon reconsideration, the RRC adhered to its original decision and ACGME approved the continuation of probation.

The final survey was performed in February 1984. The RRC, citing nine deficiencies, recommended withdrawal of accreditation. Once again the program requested reconsideration. Upon reconsideration, the RRC withdrew three deficiencies, but again recommended withdrawal of accreditation. The program requested a review by a board of appeals and a hearing was held before a board of appeals on September 23, 1985. The three members unanimously sustained the decision of the RRC as to four deficiencies and recommended withdrawal of accreditation. ACGME approved the withdrawal of accreditation effective June 30, 1987.

In this action, IMC contends that ACGME acted in an arbitrary, capricious and irrational manner and that the decision was not supported by substantial evidence. It should be noted at the outset that IMC does not contend that it was not provided with all of the "due process" reviews established by ACGME. The record reveals that IMC took full advantage of all opportunities for review before the RRC and a board of appeals (cf., *Tedeschi v Wagner Coll.,* 49 NY2d 652). The question presented was whether or not the surgical residency program of IMC substantially complied with the academic guidelines for a postgraduate medical education program.

## IV

The granting of accreditation to a surgical residency program by ACGME is, in effect, certifying to society that those participating in the program have received and are receiving adequate training and instruction and possess sufficient skills to render surgical care in health facilities (10 NYCRR 405.7) and upon completion of the program, are competent to be licensed to practice medicine (8 NYCRR 59.2, 60.3; *see, Matter of Olsson v Board of Higher Educ.,* 49 NY2d 408). Such an accreditation involves a determination of the sufficiency of the program as an educational enterprise. As a matter of sound public policy, the courts have been reluctant to intervene in controversies involving academic standards. "Because such determinations rest in most cases upon the subjective professional judgment of trained educators, the courts have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community * * * In order for society to be able to have complete confidence in the credentials dispensed by academic institutions, however, it is essential that the decisions surrounding the issuance of these credentials be left to the sound judgment of the professional educators who monitor the progress of their students on a regular basis" *(Matter of Olsson v Board of Higher Educ., supra,* at 413). The courts will intervene in academic matters only if an institution exercises its discretion in an arbitrary or irrational fashion or in bad faith *(Matter of Patti Ann H. v New York Med. Coll.,* 88 AD2d 296, *affd* 58 NY2d 734; *Matter of Olsson v Board of Higher Educ., supra,* at 414).

Upon the record before us, it cannot be said that ACGME acted in bad faith. IMC has been offered the opportunity, and has even been encouraged, to submit a proposal for a new residency program that will comply with the general and special requirements for a residency program in surgery *(see, Matter of Olsson v Board of Higher Educ., supra,* at 414). Nor do we find the decision to be arbitrary, capricious or irrational. It appears that ACGME acted within its jurisdiction, in the exercise of an honest discretion based on facts within its knowledge that justified the exercise of its discretionary judgment *(see, Matter of Patti Ann H. v New York Med. Coll., supra,* at 301).

Similarly unavailing is IMC's contention that the special requirements for surgical residency programs are impermissibly vague and subjective. It is well settled that matters

involving academic standards generally rest upon the subjective judgment of professional educators, in this case, professional medical educators *(see, Matter of Olsson v Board of Higher Educ., supra,* at 413; *Tedeschi v Wagner Coll., supra,* at 658).

## V

The primary concern of IMC in the loss of the accreditation of its surgical residency program is centered on the fact that it will not be able to attract postgraduate students in surgery in view of the requirements of the Education Law and the regulations of the Commissioner of Education. While the actual accreditation review power has been delegated to ACGME, it is the New York State Department of Education which has the primary authority to accredit residency programs of postgraduate medical education *(see,* Education Law §§ 201, 202, 210, 214-216; *Moore v Board of Regents,* 44 NY2d 593). Under Education Law § 308, the Commissioner of Education has the power and the duty to enforce and give effect to any provision of the Education Law or any rule or direction of the Board of Regents. Education Law § 310 permits any party, conceiving himself aggrieved, to appeal by petition to the Commissioner of Education who is authorized and required to examine and decide such a grievance. IMC, therefore, had the right to appeal to the Commissioner of Education from the action of ACGME in denying accreditation to its postgraduate educational program in surgery. There is no evidence in this record that IMC sought such relief from the Commissioner. We are not suggesting that the plaintiff's failure to do so constitutes a failure to exhaust administrative remedies barring the instant action. However, the doctrine of "primary jurisdiction" which is well settled in administrative law *(see generally,* 3 Davis, Administrative Law Treatise, ch 19 [1st ed]), requires that judicial proceedings not be invoked until an administrative agency with special competence in the field has acted *(see, Matter of Patti Ann H. v New York Med. Coll.,* 88 AD2d 296, *supra).* Under this doctrine of primary jurisdiction and the judicial restraint that it dictates, the Supreme Court, Kings County, should have refrained from entertaining this action. The motion of ACGME to dismiss the complaint should have been granted, and the IMC, if it be so advised, should seek review by the Commissioner of Education from the determination of ACGME *(see, Matter of Patti Ann H. v New York Med. Coll., supra).*

Accordingly, the order entered August 22, 1986, which granted a preliminary injunction enjoining defendant ACGME from effectuating its determination should be reversed and the plaintiff's motion for a preliminary injunction denied. Further, the order entered September 22, 1986, should be reversed insofar as appealed from, and affirmed insofar as cross-appealed from, and the defendant's motion to dismiss the complaint granted.

BROWN, J. P., WEINSTEIN and KOOPER, JJ., concur.

Ordered that the order entered August 22, 1986, is reversed, on the law, without costs or disbursements, and the plaintiff's motion for a preliminary injunction is denied; and it is further,

Ordered that the order entered September 22, 1986, is reversed insofar as appealed from, on the law, without costs or disbursements, the defendant's cross motion is granted, and the action is dismissed; and it is further,

Ordered that the order entered September 22, 1986, is affirmed insofar as cross-appealed from, without costs or disbursements.