628 A.2d 476

**McKEESPORT HOSPITAL, Petitioner,**

v.

**The PENNSYLVANIA STATE BOARD
OF MEDICINE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 3, 1993.

Decided June 28, 1993.

Robert V. Campedel, for petitioner.

April L. McClaine, for respondent.

Before DOYLE, PALLADINO, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

PALLADINO, Judge.

McKeesport Hospital (Hospital) appeals from an order of the State Board of Medicine (Board) dismissing its complaint against the Accreditation Council for Graduate Medical Education (ACGME).[1] We vacate and remand to the Board for further proceedings.

1. ACGME is a non-profit, private organization comprised of several medical associations and societies. It operates a national program of accreditation and review based upon a written set of standards that it has promulgated, entitled *Essentials of Accredited Residencies*. The

The Hospital is a teaching hospital which operates graduate medical training programs, commonly referred to as residencies, in several specialties. The Hospital's general surgery residency training program (Program) has been accredited since 1961. Since 1979, when its accreditation was first withdrawn and, then upon reconsideration, was granted on a provisional basis, the Program's accreditation has been provisional. The ACGME, through its Residency Review Committee (Committee),[2] reviews the Program annually.

Following a site inspection on November 6, 1990 and a review of the Program by the Committee, the Committee advised the Hospital on July 29, 1991 that the Program's accreditation was being withdrawn. The withdrawal of the Program's accreditation, which had an effective date of June 30, 1992, was based on the Program's alleged failure to be in substantial compliance with the *Essentials of Accredited Residencies.* The Hospital filed a request for reconsideration which was denied by the Committee. The effective date for withdrawal, however, was extended to June 30, 1993. The Hospital then appealed to the Board of Appeals which sustained the Committee's action.[3]

On June 9, 1992, the ACGME adopted the recommendation of the Board of Appeals, and by letter dated June 10, 1992, the ACGME advised the Hospital of its decision to withdraw accreditation.[4] The Hospital subsequently filed a complaint against the ACGME with the Board. The complaint request-

Board recognizes the ACGME as an accrediting body for graduate medical training in Pennsylvania.

2. In order to accomplish the review and evaluation of residency programs throughout the nation, the ACGME had organized Residency Review Committees for each medical specialty. Each Residency Review Committee is responsible for reviewing and evaluating all residency programs within its area of specialty pursuant to the *Essentials of Accredited Residencies.*

3. The proceeding before the Board of Appeals is the final appeal which may be taken within the framework of the ACGME.

4. Prior to the ACGME's final determination, the chairman of the Board accompanied the Residency Review Committee on two of the site visits conducted with respect to the Program.

ed, *inter alia*,[5] that a hearing be scheduled before the Board wherein the Program would be able to present evidence that the ACGME's action was unjustified, improper and without just cause.[6]

Without a hearing, the Board issued an order dismissing the Hospital's complaint. Specifically, the Board concluded that it has no authority under the Act to affect the internal accreditation process of the ACGME. The Board further concluded that because the Program failed to meet one of the two criteria required to enable it to serve as a medical training facility, the Board has no jurisdiction over the subject matter of the complaint and therefore may not provide any of the relief sought by the Hospital.

On appeal to this court, two issues are presented: 1) whether the Board is the final arbiter in matters involving the accreditation of medical training facilities in Pennsylvania; and 2) whether the Hospital is entitled to a hearing before the Board prior to its accreditation being withdrawn.[7]

With respect to whether the Board is the final arbiter in matters involving the accreditation of medical training facilities in Pennsylvania, the Medical Practice Act of 1985

5. The complaint also requested that the Board find that the *Essentials of Accredited Residencies* are invalid and improper; find that the *Essentials of Accredited Residencies* do not provide proper guidelines for the operation of the Program and are insufficient as standards for the operation of residency training programs in Pennsylvania, and order the discontinuance of their use in Pennsylvania as they presently exist; find that the ACGME has exceed its delegated authority and has abused its discretion in deciding to withdraw the Program's accreditation; refuse to sustain the action of the ACGME; continue to recognize the Program; and direct the ACGME to continue the accreditation of the Program.

6. Although the proceeding filed with the Board was a complaint against the ACGME, we will treat the Hospital's complaint as a petition for a hearing before the Board.

7. Our scope of review is limited to determining whether constitutional rights were violated and whether the decision is in accordance with the law and supported by substantial evidence. *Cassella v. State Board of Medicine, Bureau of Professional and Occupational Affairs*, 119 Pa.Commonwealth Ct. 394, 547 A.2d 506 (1988), *petition for allowance of appeal denied*, 522 Pa. 585, 559 A.2d 528 (1989).

(Act)[8] and the regulations promulgated by the Board are instructive. Section 23 of the Act provides that in order to qualify candidates for medical licensure in Pennsylvania, the curricula and training to be offered by medical training facilities,[9] such as the Hospital, "shall meet the requirements set by the board and any accrediting body which may be recognized by the board." 63 P.S. § 422.23(a).

Section 23 further provides that:

> [i]t shall be the duty of the board, in its discretion, periodically to ascertain the character of the instruction and the facilities possessed by each of . . . medical training facilities offering or desiring to offer medical training in accordance with the requirements of this act. . . . In enforcing this provision, the board shall give due notice to any . . . hospital upon which it has rendered a decision that its training and facilities do not meet the standards required by the board.

63 P.S. § 422.23(b).

In the event the Board determines that a medical training facility has failed to provide adequate facilities, curricula or training, the Act provides that the Board shall not recognize the education or degrees obtained from the medical training facility during the period of inadequacy. 63 P.S. § 422.23(c).

A plain reading of the statute indicates that the final authority with respect to accreditation rests with the Board and not with a private accrediting body. Although the Board *may* recognize an accrediting body, it is not required to do so. All authority remains with the Board unless the Board affirmatively appoints an accrediting body. Furthermore, nowhere in the Act is an accrediting body given sole discretion to set the standards by which residency programs are evaluated.

**8.** Act of December 20, 1985, P.L. 457, 63 P.S. §§ 422.1–422.45.

**9.** Section 2 of the Act defines "medical training facility" as "a hospital . . . which provides courses in the art and science of medicine and surgery and related subjects for the purpose of enabling a matriculant to qualify for a license to practice medicine and surgery, graduate medical training. . . ." 63 P.S. § 422.2.

 Nor does the Act give an accrediting body the power to enforce the Act or the power to regulate or eliminate a program without the Board's review. Instead, it is the Board which, in enforcing the provisions of the Act, must give notice to any hospital upon which it has rendered a decision that its training and facilities do not meet the requisite standards. Clearly, the Act vests the Board with the primary authority to accredit residency programs and otherwise enforce and give effect to the Act.

The Board's regulations further define the role of the Board in the accreditation process. Pursuant to 49 Pa.Code Section 17.23, the Board is responsible for determining the character of instruction and the facilities possessed by each of the hospitals which carries out graduate medical education programs in this Commonwealth. This regulation also explains the role of the ACGME and its interaction with the Board. Specifically, the regulation provides as follows:

The Council on Medical Education of the American Medical Association [10] possesses the facilities and staffing required to perform evaluations of the qualifications of the various programs and also the mechanism for accreditation of acceptance programs. The Board and the [Council] work cooperatively in evaluating and approving the training programs in this Commonwealth. A comity exists between the Board and the [Council] under which all intended observations of training programs for accreditation are communicated to the Board and the Board makes all requests for accreditation or investigation of training programs to the [Council]. If an investigation of the programs of the various institutions in this Commonwealth is to be conducted, the Board will provide one of its members or appoint an individual to accompany the investigator on each occasion. An institution within this Commonwealth seeking approval of its programs by the [Council] will be informed that action

10. The ACGME succeeded the Council on Medical Education of the American Medical Association (Council), and the ACGME assumed Council's functions.

taken by the accrediting agency will be related to the Board.

49 Pa.Code § 17.23 (footnote added).[11]

A plain reading of the Board's regulations also supports the conclusion that the final authority regarding accreditation of medical training facilities rests with the Board. Accreditation by the ACGME merely is a tool which establishes critical facts leading to the Board's recognition of whether the curricula and training offered by a particular medical training facility meet or do not meet its accreditation standards. The delegation to the ACGME is made in recognition of the fact that the ACGME's resources are more efficient and better suited for the task of accrediting medical training facilities. Generally, such delegations are held permissible where the private entity is merely a fact finding vehicle upon which the action of the agency depends. *See Pennsylvania Chiropractic Federation v. Foster*, 136 Pa.Commonwealth Ct. 465, 583 A.2d 844 (1990). Moreover, as previously stated, the ultimate authority to determine accreditation is vested with the Board.[12]

With respect to whether the Hospital is entitled to a hearing before the Board, Section 9 of the Act provides that "[a]ll actions of the board shall be taken subject to the right of notice, hearing and adjudication, and the right of appeal therefrom, in accordance with the provisions of Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure)." 63 P.S. § 422.9(a). Therefore, we con-

11. The Board's regulations also provide:

A member of the Board or a Board designee may be present during formal review sessions by a Residency Review Committee. Commonwealth hospitals have the affirmative duty of informing the Board when a residency program has been approved, probationed or disapproved. The Board may at the request of either of the parties act as a mediator in disputes that may arise from alleged deficiencies in graduate medical education programs.

49 Pa.Code § 17.25.

12. Although the Act vests the Board with ultimate authority in matters involving accreditation, we must agree with the Board that the Act does not confer upon the it the authority to intervene in the internal accreditation process of a private body, such as the ACGME.

clude that the Program's accreditation may not be withdrawn without giving the Hospital an opportunity to be heard before the Board.

Based upon the foregoing, we vacate the order of the Board and remand the matter for further proceedings.

## ORDER

AND NOW, June 28, 1993, the order of the State Board of Medicine in the above-captioned matter is vacated and the case remanded for further proceedings. It also is ordered that the accreditation of the general surgery residency training program of the McKeesport Hospital remain in effect pending a hearing before the Board and the Board's rendering of a final appealable order in this matter.

Jurisdiction relinquished.

DOYLE, Judge, dissenting.

Respectfully, I dissent.

Section 23 of the Medical Practice Act of 1985, Act of December 20, 1985, P.L. 457 (Act), 63 P.S. § 422.23, provides:

*(a) General Rule.*—The educational *qualifications* for acceptance as a matriculant in a medical college or other medical training facility incorporated within this Commonwealth *and the curricula and training to be offered by such medical colleges or other medical training facility shall meet the requirements set by the board* **and** *any accrediting body which may be recognized by the board.*

*(b) Duties of the board.*—It shall be the duty of the board, in its discretion, periodically to ascertain the character of the instruction and the facilities possessed by each of the medical colleges and other medical training facilities offering or desiring to offer medical training in accordance with the requirements of this act. It shall further be the duty of the board, by inspection and/or otherwise, to ascertain the facilities and qualifications of medical colleges and other medical training facilities outside this Commonwealth,

whose graduates or trainees desire to obtain licensure, graduate medical training or certification in this Commonwealth, provided further that the board shall have the authority to refuse to license graduates of any such medical institutions, colleges or hospitals which in its judgment do not meet similar standards for medical training and facilities as are required of medical institutions in this Commonwealth. In enforcing this provision, the board shall give due notice to any medical institution, college or hospital upon which it has rendered a decision that its training and facilities do not meet the standards required by the board. *(c) Refusal of recognition.*—In the event that the board determines that a medical training facility has failed to provide adequate facilities, curricula or training, the board shall not recognize the education or degrees obtained from the medical training facility during the period of inadequacy. (Emphasis added in part.)

In my view Section 23(a) sets up two requirements for the educational qualifications of McKeesport Hospital (Hospital). First, it must meet whatever requirements the State Board of Medicine (Board) chooses to impose, and second, it must also meet the accreditation requirements of any accrediting body the Board, in its discretion, chooses to recognize.[1] The fact, however, that the Board has exercised its discretion and imposed an accreditation requirement, does not mean that the Board has the authority to review the accreditation decisions of a private accrediting body on a case by case basis. The Board's review occurs when it selects an accrediting body, fully aware of the criteria which that body will employ in making its decisions.

The majority states that, "[a] plain reading of the statute indicates that the final authority with respect to accreditation rests with the Board and not with a private accrediting body." I agree that the Board does have final authority on whether to

1. In contrast, to a "hospital" or a "medical training facility," which by definition do not mandate accreditation, "graduate medical training" does mandate accreditation. *See* Section 2 of the Act, 63 P.S. § 422.2. *See also,* note 2, *infra.*

employ an accrediting body and if so, which one. I do not agree however, that the Act, in any way, authorizes the Board to get into the merits of individual accrediting decisions of that separate independent body. Nowhere does *the Act* say this, and in determining a question of subject matter jurisdiction the majority's reliance upon the *rules* promulgated by the Board itself is inappropriate. The Board is a creature of statute and has only those powers given it by the legislature. *Department of Environmental Resources v. Butler County Mushroom Farm*, 499 Pa. 509, 454 A.2d 1 (1982). Thus, if it has the power to grant a hearing in a case such as this one, that power can come only from its enabling legislation, not from any rules *it* may have promulgated in order to enhance its working relationship with an accrediting body.[2]

With regard to the issue of whether Hospital should have lost its accreditation, I note that it has already been granted review on that issue by the Residency Review Committee, the Board of Appeals and A.C.G.M.E. itself. While the nature of that review may not be of the level desired by Hospital, since it was not a full due process hearing,[3] I can find no authority

**2.** Additionally, as a practical matter, I believe it is enlightening to consider why accrediting bodies are employed. The Board is concerned not only with licensure of physicians who are educated in the Commonwealth, but those who are educated in other states and abroad. It, however, would be impractical and very costly for the taxpayers if Board members had to visit, continually, medical facilities all over the world in order to be certain that suitable standards exist for the education of the Commonwealth's future doctors. Thus, it is statutorily empowered to employ accrediting bodies to assist it. *See generally,* Section 2 of the Act, 63 P.S. § 422.2, (defining "accredited medical colleges," "unaccredited medical colleges," and "graduate medical training"). Further, I note that the State Supreme Court has already judicially recognized the benefits of private accrediting bodies and upheld the determination of factual matters by them as being a permissible delegation of power. *Appeal of Murphy*, 482 Pa. 43, 393 A.2d 369 (1978), *cert. denied*, 440 U.S. 901, 99 S.Ct. 1204, 59 L.Ed.2d 449 (1979), (pertaining to law school accreditation by the American Bar Association).

**3.** A.C.G.M.E.'s appeal hearing procedures pertinently provide:

Proceedings before an appeals panel are not of an adversary nature as typical in a court of law, but rather, provide an administrative mechanism for peer review of an accreditation decision about an

in the Act or elsewhere which would mandate the level of review Hospital seeks. Specifically, Section 9(a) of the Act, 63 P.S. § 422.9(a), grants the right to a hearing where an action has been taken by the Board. Here, the Board has taken no action. The only action has been the withdrawal of accreditation, and this by a private body. Further, Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702, provides for an appeal only where one has been aggrieved "by an adjudication of a Commonwealth agency." A.C.G.M.E. is certainly not an executive, government or independent agency, *see* Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101, inasmuch as it is a private body. Thus, no right to a hearing has been established.

There is, of course, one instance where a hospital would be entitled to a Board hearing, although it would be severely narrow: if there were a dispute as to whether a hospital had, in fact, lost its accreditation (as distinguished from whether it should have lost it) the Board would be required to grant a hearing on that issue because whether continuing accreditation exists is a criterion which must be known in order for the Board to determine whether, under Section 23(a), the facility remains qualified. Here, however, there is no dispute over this fact, and so, in my view, no hearing is needed.

For these reasons, I would affirm the order of the Board.

educational program. The appeals panel shall not be bound by technical rules of evidence usually employed in legal proceedings.
. . . .
The decision of the ACGME in this matter is final. There is no provision for further appeal.