OPINION OF THE COURT
NYGAARD, Circuit Judge.
McKeesport Hospital brought this 42 U.S.C. § 1983 action against the Accreditation Council for Graduate Medical Education (the “ACGME”) and the Executive Secretary of its residency review committee for surgery, alleging that their withdrawal of the accreditation of the Hospital’s general surgery residency program violated due process. The district court entered a preliminary injunction blocking the accreditation withdrawal. Because we conclude that the ACGME’s conduct was not state action, we will reverse.
I.
Pennsylvania’s Medical Practice Act of 1985 (the “Act”), 63 Pa.Stat.Ann. §§ 422.1-422.25, requires that the admission standards, facilities, curricula, and training at any medical college or “medical training facility” in the Commonwealth “meet the requirements set by the [Pennsylvania State Board of Medicine (the “Board”) ] and any accrediting body which may be recognized by the *521 board.” Id. § 422.23(a). The term “medical training facility” includes a medical college, hospital or other institution providing graduate medical training. Id. § 422.2. Graduate medical training, which is commonly referred to as a residency, is defined in the Act as
training approved or recognized by the board which is either:
(1) accredited as graduate medical education by any accrediting body recognized by the board for the purpose of accrediting graduate medical education ...; or
(2) provided by a hospital accredited by any accrediting body recognized by the board and is acceptable to an American specialty board towards the training it requires for the certification it issues in a medical specialty or subspecialty....
Id. § 422.2.
The Act provides that
[i]t shall be the duty of the board, in its discretion, periodically to ascertain the character of the instruction and the facilities possessed by each of the medical colleges and other medical training facilities offering or desiring to offer medical training in accordance with the requirements of this act.
Id. § 422.23(b). If the Board deems a program inadequate, “the board shall not recognize the education or degrees obtained from [it] during the period of inadequacy.” Id. § 422.23(c). The Board must provide “due notice” to any institution found not to meet its standards. Id. Its actions, moreover, are “subject to the right of notice, hearing and adjudication, and the right to appeal therefrom, in accordance with the provisions of Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure).” Id. § 422.9.
The Board has by regulation recognized the ACGME as the accrediting body for graduate medical training programs in Pennsylvania. The relevant regulation reads
[t]he Board is responsible for determining the character of instruction and the facilities possessed by each of the various medical education institutions and hospitals who carry out graduate medical education programs in this Commonwealth. The Council on Medical Education of the American Medical Association [the ACGME’s predecessor] possesses the facilities and staffing required to perform evaluations of the qualifications of the various programs and also the mechanism for accreditation of acceptance programs. The Board and the Council ... work cooperatively in evaluating and approving the training programs in this Commonwealth. A comity exists between the board and the Council ... under which all intended observations of training programs for accreditation are communicated to the Board and the Board makes all requests for accreditation or investigation of training programs to the Council- If an investigation of the programs of the various institutions in this Commonwealth is to be conducted, the Board will provide one of its members or appoint an individual to accompany the investigator on each occasion. An institution within this Commonwealth seeking approval of its programs by the Council ... ■will be informed that action taken by the accrediting agency will be related to the Board.
49 Pa.Code § 17.23. The ACGME is a private, unincorporated association made up of representatives of five medical organizations — the American Board of Medical Specialties, the American Medical Association, the American Hospital Association, the Association of American Medical Colleges, and the Council of Medical Specialty Societies— that evaluates and accredits residency programs throughout the United States.
The ACGME’s review is governed by its own set of standards, The Essentials of Accredited Residencies. The ACGME has organized twenty-six residency review committees, one for each of twenty-six medical specialties, that evaluate the programs in each area under these standards. The committee for surgery, for example, is composed of 12 members appointed by the American Board of Surgery, the American College of Surgeons, and the American Medical Association.
The evaluation process begins when an application is submitted by the residency *522 program’s director. The committee then sends a surveyor to the training facility to verify the information. When reviewing a program in Pennsylvania, the ACGME notifies the Board of the visit, and a Board member or representative may accompany the surveyor to the facility. The surveyor meets with faculty and students, reviews program data, and submits a report to the committee. The submission of the report ends the site surveyor’s role; he or she does not participate in the committee’s decision.
The residency review committee then reviews the report and the program’s file, and recommends either full accreditation, probation, or withdrawal of accreditation. A training facility that is dissatisfied with the recommendation may request reconsideration by the committee and, if the committee adheres to its position, may seek a hearing before an appeals panel consisting of three directors of accredited residencies in the program’s specialty. A facility requesting an appeals panel hearing receives a list of potential members from which it may delete up to one-third of the candidates; the panel is constituted from those who remain. The facility may submit additional information at both the reconsideration and appeal stages and may be represented by counsel and present witnesses before the appeals panel.
The appeals panel’s recommendation, the material it considered, and a transcript of its hearing are reviewed and either adopted or rejected by the ACGME’s executive committee. The executive committee’s determination is then voted on by the ACGME, whose decision is final. A training facility whose accreditation is withdrawn may, however, reapply for ACGME accreditation at any time.
II.
McKeesport Hospital, a community hospital in McKeesport, Pennsylvania, offers graduate medical training in several specialties, including general surgery. The Hospital’s general surgery residency program was first accredited by the ACGME’s predecessor in 1961, although its ACGME accreditation has been provisional since 1979. The program has had Board recognition since the Board began recognizing residency programs under the Act.
After a November 1990 site visit and its review, the ACGME’s residency review committee for surgery recommended withdrawal of the program’s accreditation,' citing five deficiencies that allegedly rendered the program not in substantial compliance with The Essentials of Accredited Residencies. The Hospital requested reconsideration and the committee, as á result, rescinded one of the deficiencies and extended the withdrawal’s effective date by one year. The Hospital appealed to an appeals panel, which held a hearing and ultimately affirmed the committee’s action. The appeals panel’s decision was adopted by the ACGME’s executive committee and then by the entire ACGME, and the Hospital was notified that the program’s ACGME accreditation would be withdrawn.
It does not appear that the ACGME communicated this decision to the Board. Rather, the Hospital sought review of the ACGME’s decision by the Board. The Board, however, dismissed the case, concluding that it had no authority to intrude upon the ACGME’s accreditation process and, because the Hospital had failed one of the two criteria to be a medical training facility in Pennsylvania, had no jurisdiction over the Hospital’s appeal. The Hospital appealed the Board’s dismissal to the Pennsylvania Commonwealth Court.
Before the Commonwealth Court rendered any decision in the case against the Board, however, the Hospital commenced this action against the ACGME, alleging that its decision to withdraw the program’s accreditation lacked due process.[1] After a three-day hearing, the district court made extensive findings of fact and conclusions of law and granted the Hospital’s motion for a preliminary injunction to prevent the accreditation withdrawal from becoming effective. The ACGME appealed.
*523 After this appeal was filed, the Commonwealth Court reversed the Board’s dismissal order. McKeesport Hosp. v. Pennsylvania State Bd. of Medicine, 156 Pa.Cmwlth. 480, 628 A.2d 476 (1993). The Commonwealth Court determined that under the plain language of the Act, the Board is “the 'final arbiter of matters involving the accreditation of medical training facilities in Pennsylvania,” and remanded the case to the Board for a hearing. Although the court agreed that the Board could not intervene in the ACGME’s accreditation process, it disagreed that the ACGME’s decision ended the Board’s inquiry. 628 A.2d at 479 & n. 12. The court stated: “[accreditation by the ACGME merely is a tool which establishes critical facts leading to the Board’s recognition” of a medical training facility. 628 A.2d at 479. The court ordered that the program remain recognized until the Board holds a hearing and issues a final order in the case. Id. The Board has filed a petition for allowance of appeal to the Pennsylvania Supreme Court, but that court has not yet granted or denied allocatur.
III.
The district court had jurisdiction over the Hospital’s section 1983 claim under 28 U.S.C. §§ 1331 and 1343(a)(3); we have jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1). We review the grant of a preliminary injunction to determine “whether there has been ‘an abuse of discretion, a clear error of law, or a clear mistake on the facts.’” Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 198 (3d Cir.1990) (citation omitted). If we find either or both of the fundamental preliminary injunction requirements — a likelihood of success on the merits and the probability of irreparable harm if relief is not granted — to be absent, the district court’s order cannot be affirmed. Id.
The Fourteenth Amendment protects individuals only against government action. To succeed on the merits of its Section 1983 due process claim, the Hospital must therefore show that the action of the ACGME, a private entity, is “fairly attributable” to the Commonwealth of Pennsylvania. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The district court concluded, based on the “close nexus between the ACGME and the Board” and “the delegation of the Pennsylvania State Board of Medicine’s duties to the ACGME” that it was likely that the Hospital would be able to do so. Our review of this legal determination, a prerequisite to the grant of the injunction, is plenary. John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657, 658 (3d Cir.1986), cert. denied, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987).
The question of whether a private accrediting body’s decision constitutes state action is, for us, one of first impression. In cases involving accrediting organizations other than the ACGME, a number of courts have not found state action. See Medical Inst. of Minn. v. National Ass’n of Trade & Technical Sch., 817 F.2d 1310, 1312-14 (8th Cir.1987); Peoria Sch. of Business, Inc. v. Accrediting Council for Continuing Educ. & Training, 805 F.Supp. 579, 581-83 (N.D.Ill. 1992); Transportation Careers, Inc. v. National Home Study Council, 646 F.Supp. 1474, 1478-79 (N.D.Ind.1986); Dietz v. American Dental Ass’n, 479 F.Supp. 554, 556 (E.D.Mich.1979); Parsons College v. North Central Ass’n of Colleges & Secondary Sch., 271 F.Supp. 65, 70 (N.D.Ill.1967). We have uncovered only one case where state action was found, Marjorie Webster Junior College v. Middle States Ass’n of Colleges & Secondary Sch., 302 F.Supp. 459 (D.D.C.1969), rev’d on other grounds, 432 F.2d 650 (D.C.Cir.), cert. denied, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970), but it was decided long before the Supreme Court’s state action trilogy, Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), and Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), which binds us now.
These cases do not answer our question as to the ACGME, because the state action determination is a “necessarily fact bound inquiry.” Lugar, 457 U.S. at 939, 102 S.Ct. at 2755. Before we begin that inquiry, however, we note that a New York state court indicated in dicta that an accreditation decision by the ACGME did not fall within the *524 state action doctrine. Interfaith Medical Ctr. v. Sabiston, 133 Misc.2d 308, 309, 507 N.Y.S.2d 124, 125 (1986), aff'd in part and rev’d in part on other grounds, 136 A.D.2d 238, 527 N.Y.S.2d 48 (2d Dept.1988). Moreover, although a Maryland district court found an ACGME accreditation withdrawal to be state action in St. Agnes Hosp. v. Riddick, 668 F.Supp. 478, 479-82 (D.Md. 1987), it later questioned that conclusion in light of the Supreme Court’s decision in National Collegiate Athletic Ass’n v. Tarkanian, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), but did not resolve the issue because it ruled for the defendant on other grounds. St. Agnes Hosp. v. Riddick, 748 F.Supp. 319, 326 (D.Md.1990).
Because the Hospital’s challenge is to the ACGME’s decision to withdraw the program’s accreditation alone, this case presents a “typical” state action issue — “a private party has taken the decisive step that caused the [alleged] harm to the plaintiff, and the question is whether the state was sufficiently involved to treat that decisive conduct as state action” and thus permit the Hospital to sue the ACGME instead of the state Board. Tarkanian, 488 U.S. at 192, 109 S.Ct. at 462. State action may be found if the private party has acted with the help of or in concert with state officials. Compare Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), Lugar, supra, and Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (finding state action) with Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (finding no state action). Alternatively, it may be found when the private party has been “delegated ... a power ‘traditionally exclusively reserved to the State.’” Flagg Bros., 436 U.S. at 157, 98 S.Ct. at 1734 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)). Finally, state action may be found if “there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may fairly be treated as that of the State itself.” Jackson, 419 U.S. at 351, 95 S.Ct. at 453.
We conclude on the undisputed facts of this ease that the ACGME’s withdrawal of the program’s accreditation was not state action. First, it is certain that no state officials participated in the ACGME’s accreditation withdrawal. The applicable standard is one of “overt, significant assistance.” Edmonson, 500 U.S. at 622,- 111 S.Ct. at 2084. Although a Board member did accompany the ACGME’s site surveyor to the Hospital, he acted only as an observer, and played no part in the surveyor’s inspection or in any stage of the ACGME’s decision. This is not enough to make the ACGME’s withdrawal decision state action. Cf. Flagg Bros., 436 U.S. at 156-57, 98 S.Ct. at 1733-34 (in a suit where the plaintiff was challenging a warehouseman’s threat to sell her belongings pursuant to a state self-help statute, the fact that the city marshal had supervised the plaintiffs eviction and arranged for her possessions to be stored at the defendant’s warehouse did not constitute overt official involvement in the challenged conduct).
The district court concluded that the Board delegated its duties to the ACGME, thereby rendering the ACGME’s actions fairly attributable to the state. We cannot agree. As the Commonwealth Court’s decision makes clear, under the Act the state Board remains ultimately responsible for approving medical training facilities in Pennsylvania. Cf. Tarkanian, 488 U.S. at 195-98, 109 S.Ct. at 464-65 (finding no delegation when the state retained the ability to adopt or reject a private association’s decision). Merely because the state Board deems its obligation met by following the ACGME’s accreditation decisions does not imbue the ACGME with the authority of the state nor does it shift the responsibility from the state Board to the ACGME. The Board remains the state actor. Moreover, even if a delegation occurred, that alone is insufficient. For state action, the private actor must be exercising a power that is “ ‘traditionally the exclusive prerogative of the state[,]’ ” Blum, 457 U.S. at 1005, 102 S.Ct. at 2786 — for example, running an election, Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), or providing a municipal park, *525 Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486 (1966). This, of course, is not the case here.
Medical residencies are a vital component of medical education, providing new doctors with a supervised transition “between the pure academics of medical school and the realities of medical practice.” Interfaith Medical Ctr. v. Sabiston, 136 A.D.2d 238, 239, 527 N.Y.S.2d 48, 49 (2d Dept.1988). The evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state function. Rather, United States medical schools have been privately accredited for nearly a century. See Rosemary Stevens, American Medicine and the Public Interest 55-73 (1971). The ACGME’s predecessor, the Council on Medical Education, began accrediting medical schools in 1906, Siirila v. Barrios, 398 Mich. 576, 614, 248 N.W.2d 171, 186 (1976) (Williams, J., concurring), and has been reviewing and evaluating residency programs since the 1950s, Stevens, supra, at 378-414. That, in doing so, the ACGME serves the public interest does not make it a state actor. Rendell-Baker, 457 U.S. at 842, 102 S.Ct. at 2772; Jackson, 419 U.S. at 352-55, 95 S.Ct. at 454-55. Furthermore, although the state Board has taken on the function of approving Pennsylvania residency programs under the Act, “that legislative policy choice in no way makes these services the exclusive province of the State.” Rendell-Baker, 457 U.S. at 842, 102 S.Ct. at 2772.
The district court also found the connection between the state Board and the ACGME sufficient to turn the latter into a state actor. We must disagree. Sometimes, a state and an ostensibly private entity are so interdependent that state action will be found from their symbiotic relationship alone. See Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (finding state action based on lease relationship that benefitted and obligated both parties). The relationships of the University of Pittsburgh and Temple University to the Commonwealth provide an example. The Universities are designated by their governing legislation as “instrumentalit[ies] of the Commonwealth” and “State-related institution[s].” These statutes provide for one-third of the Universities’ voting trustees to be appointed by state officials and for several officials to serve as ex officio trustees; allow the Commonwealth to set tuition and fee schedules; promise annual appropriations, to be used as the Commonwealth specifies; impose stringent reporting requirements as to fiscal and other affairs; authorize the same capital development assistance as allowed wholly-owned state colleges; and create tax exemptions for income derived from bonds the Universities issue and loans secured by mortgages on their properties. See Krynicky v. University of Pittsburgh, 742 F.2d 94, 101-02 (3d Cir.1984), cert. denied, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985); Braden v. University of Pittsburgh, 552 F.2d 948, 959-61 (3d Cir.1977). The ACGME’s relationship to the state is clearly distinguishable. The ACGME is self-governed and financed, and its standards are independently set; the state Board simply recognizes and relies upon its expertise.
Alternatively, a connection between the state and a specific decision of a private entity may render that decision chargeable to the state. See Jackson, 419 U.S. at 351, 95 S.Ct. at 453. Under this approach, however, state action will be found only “when [the state] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private decision] must in law be deemed that of the State[;]” “mere approval of or acquiescence in” the decision is not enough. Blum, 457 U.S. at 1004, 102 S.Ct. at 2786. The required state coercion or encouragement of the ACGME’s actions is not present here.
The Hospital is challenging the ACGME’s decision to withdraw the program’s accreditation, not the Board’s action in response. The Board, however, does not control or regulate the ACGME’s standard-setting or decision-making processes. Although it recognizes them, state law does not dictate or influence those actions. Rather, the ACGME’s decisions are “judgments made by private parties according to ... standards that are not established by the State.” Blum, 457 U.S. at 1008, 102 S.Ct. at 2788. That the Board bases its approval of medical residency programs on ACGME accredita *526 tion does not turn the ACGME’s decisions into state action. See Tarkanian, supra (state university’s suspension of basketball coach in compliance with NCAA recommendation did not convert NCAA decision into state action); Blum, supra (state officials’ adjustment of Medicaid benefits in response to private nursing homes’ decisions to discharge or transfer patients did not render the state responsible for those decisions). To paraphrase the Supreme Court’s conclusion in Tarkanian, it is more accurate to say that the Board conducts its approval of medical residency programs under color of the ACGME’s policies than that those policies were developed and enforced under color of Pennsylvania law. See Tarkanian, 488 U.S. at 199, 109 S.Ct. at 466.
IV.
Accordingly, because we conclude the ACGME performed no state action, we will vacate the preliminary injunction order and remand the cause to the district court.

. In addition to the due process claim, the Hospital's complaint asserted federal antitrust and Pennsylvania contract law claims. The district court dismissed the antitrust and breach of contract counts; that dismissal is not at issue on appeal.