■ WILLIAM J. DOWNEY, Appellant, v FRANCIS J. SCHNEIDER et al., Defendants, and SEMINARY OF THE IMMACULATE CONCEPTION, INC., Respondent. [806 NYS2d 657]—

In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals from so much of an order of the Supreme Court, Nassau County (Parga, J.), dated February 9, 2004, as granted the motion of the defendant Seminary of the Immaculate Conception for summary judgment dismissing the complaint insofar as asserted against it in its entirety.

Ordered that the order is affirmed insofar as appealed from, with costs.

The plaintiff, a graduate student in theology at the defendant Seminary of the Immaculate Conception (hereinafter the Seminary) since 2000, was denied the opportunity to re-enroll for the 2002-2003 academic year. Although his academic record admittedly satisfied the requirements for continued participation in the degree program for which he was enrolled, he had engaged during the previous two years in an ongoing dispute with the academic dean and rector of the Seminary, and ultimately the bishop of the diocese that sponsors the Seminary, over the doctrinal orthodoxy of the subject matter of some of the courses in which he had been enrolled.

By a previous order, from which no appeal was taken, the Supreme Court dismissed the plaintiff's claims of fraud and negligence against the Seminary, as well as all of his claims against the other defendants, defining his only viable cause of action as "limited to a determination of whether the plaintiff's expulsion was pursuant to the defendants' guidelines within the exercise of honest discretion or arbitrary." By order dated February 9, 2004, the Supreme Court granted the Seminary's motion for summary judgment dismissing that cause of action, holding that "[t]he Seminary has the inherent power and discretion to dismiss the plaintiff from its masters' program in theology, and the plaintiff's repeated refusal to accept the Seminary's religious authority in conjunction with his threats to publicly criticize and attack the Seminary justified the exercise of the Seminary's discretion to expel him as a student."

Although we do not concur that a student's threat to criticize his educational institution publicly justifies his dismissal, we nevertheless affirm because we find that, in the circumstances presented here, the Seminary established, prima facie, that its determination to refuse to permit the plaintiff to re-enroll was within the proper bounds of its discretion and the plaintiff failed, in response, to raise a triable issue of fact or establish

that with the additional discovery he has sought he may be able to do so.

The relationship between a private institution of higher learning and its students is based upon an implied contract (*see Matter of Carr v St. John's Univ., N.Y.*, 17 AD2d 632 [1962], *affd* 12 NY2d 802 [1962]). While the terms of the contract are set forth, for the most part, in the institution's catalogue and other publications (*see Vought v Teachers Coll., Columbia Univ.*, 127 AD2d 654, 654-655 [1987]), there are certain reciprocal obligations that are implicit in the relationship itself. Among those are the implied obligation of the institution to confer upon the student the degree he or she seeks upon the student's completion of all of the stated requirements therefor, and the implied obligation of the student to act in good faith in pursuing his or her studies (*see Vought v Teachers Coll., Columbia Univ., supra; Matter of Carr v St. John's Univ., N.Y., supra; Goldstein v New York Univ.*, 76 App Div 80 [1902]).

The Seminary predicates its argument that it did not breach the implied contract with the plaintiff on the terms of its catalogue for the 2002-2003 academic year. That catalogue provides, in relevant part, that the Seminary "reserves the right to require a student to withdraw if, in the judgment of Seminary officials, such action would be beneficial to the best interests of the student or is considered necessary for the welfare or reputation of the Seminary." There was no such language in the previous editions of the catalogue and the evidence adduced in opposition to the motion establishes at best, from the Seminary's perspective, an issue of fact as to whether that catalogue was published prior to the Seminary's decision to refuse the plaintiff re-enrollment. The Seminary cannot be entitled to summary judgment on that basis.

The Seminary's position in this regard is not supported by the language in prior catalogues that the terms of the catalogue may be changed without notice. Although such language is sufficient to support a change in tuition (*see Prusack v State of New York*, 117 AD2d 729 [1986]), it is not sufficient to support a substantive change in the terms upon which a student will be retained, at least in the face of evidence suggesting that the catalogue change was intended, based on both its timing and its tenor, to justify the dismissal of a particular student.

Nevertheless, the Seminary established its entitlement to summary judgment by demonstrating, through submission of the lengthy and detailed correspondence between the plaintiff and the academic authorities at the Seminary, that the plaintiff was unwilling to accept the authority of the academic dean and

rector of the Seminary to make decisions for the institution with respect to the content of its courses. Although the plaintiff's threat to publicly air his grievances was not, in itself, a legitimate basis for denying him re-enrollment, it is compelling evidence of his unwillingness to accept such authority. Academic decisions are peculiarly within the province of the educational authorities and beyond review by the judiciary (*see Matter of Susan M. v New York Law School*, 76 NY2d 241 [1990]; *Matter of Olsson v Board of Higher Educ. of City of N.Y.*, 49 NY2d 408 [1980]; *Matter of Patti Ann H. v New York Med. Coll.*, 88 AD2d 296 [1982], *affd* 58 NY2d 734 [1982]). This is particularly true where, as here, the student is pursuing a religious program and the course content at issue is purely religious. Even though the program in which the plaintiff was matriculated did not lead to a religious ordination and was secularly accredited, it was offered in the furtherance of the Seminary's mission of "serv[ing] men and women, lay and religious . . . who desire to deepen their knowledge of the Christian tradition and their living of the Christian life in the world," and was concededly undertaken by the plaintiff "to transform [his] Catholic faith into a more active and life-giving mode." In these circumstances, it was within the authority of the Seminary's officials, and was not an arbitrary exercise of that authority, to determine that the plaintiff's conduct had gone beyond legitimate academic disputation to an unwillingness to accept institutional authority and, upon so concluding, to deny the plaintiff's request to continue his studies.

The plaintiff failed to raise a triable issue of fact in response to this showing by the Seminary. Moreover, since the plaintiff's request for additional discovery was not calculated to develop any additional information relevant to the plaintiff's claim and can be characterized as nothing more than a fishing expedition, relief pursuant to CPLR 3212 (f) was properly denied (*see Greenberg v McLaughlin*, 242 AD2d 603, 604 [1997]; *Price v County of Suffolk*, 303 AD2d 571 [2003]; *Karakostas v Avis Rent A Car Sys.*, 301 AD2d 632 [2003]; *Zarzona v City of New York*, 208 AD2d 920 [1994]; *Amsterdam Sav. Bank v Terra Domus Corp.*, 97 AD2d 41, 45 [1983]). Schmidt, J.P., Santucci, Rivera and Spolzino, JJ., concur.