JOSEPH LEE MOORE, GEORGE T. CONNELL, WILLIAM O'NEILL, ANTHONY CUCCI, ROWLAND J. DONALDSON, JOHN SHOULDTS, JOHN BURNETT, ANTONIOUS WINKENS, JOSEPH MAHAN, BEN GESHENSKY AND DAVID GREGORY, PLAINTIFFS-APPELLANTS, v. LOCAL UNION NO. 483, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRONWORKERS, AFL-CIO AND INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRONWORKERS, AFL-CIO, DEFENDANTS-RESPONDENTS.

Argued November 18, 1974—Decided February 14, 1975.

528

*Mr. John A. Craner* argued the cause for appellants (*Messrs. Craner, Brennan & Nelson,* attorneys).

*Mr. Thomas L. Parsonnet* argued the cause for respondents (*Messrs. Parsonnet, Parsonnet & Duggan,* attorneys).

The opinion of the Court was delivered by

COLLESTER, P. J. A. D., Temporarily Assigned. Plaintiffs, who are members of various local unions of the International Association of Bridge, Structural and Ornamental Iron-workers, AFL-CIO (International Association), brought an action in the Chancery Division against the International Association and Local Union No. 483 (Local 483) to compel the local union to approve their applications for transfer of membership to Local 483 in compliance with the international constitution and to accord them all rights, privileges and benefits thereof. At the conclusion of the trial the Chan-

cery Division judge found that the practice of Local 483 in rejecting all applications for transfer of membership constituted an abuse of discretion but that the ultimate relief sought of directing the enrollment of plaintiffs as members of Local 483 was beyond his power to grant. Accordingly, the trial judge entered judgment in favor of the defendants.

Plaintiffs filed a notice of appeal with the Appellate Division and thereafter moved for certification of the appeal to this Court pursuant to *R.* 2:12–2. We granted certification. 65 *N. J.* 579.

Defendant International Association is an unincorporated association comprised of various local unions with a membership of over 160,000 ironworkers throughout the United States and Canada. Defendant Local 483, one of its affiliates, has approximately 140 active members and its geographical jurisdiction includes the counties of Bergen, Passaic and part of Sussex. Together with four other local unions, united in a confederation known as the District Council of Northern New Jersey, Local 483 participates in the negotiation of collective bargaining contracts with employers of iron and steel workers in the area. From 350 to 500 ironworkers work in the three counties which are within the jurisdiction of the local union. Members of other local unions affiliated with the International Association secure work through the hiring hall operated by Local 483. They have no voice in the negotiation of collective bargaining contracts which govern the terms and working conditions of their employment, cannot vote to reject or ratify a negotiated contract, nor do they have the right to vote or otherwise participate in the affairs of Local 483. Non-members of the local union are required under the international constitution to pay travel service dues of $2.50 per week to Local 483 in order to accept or hold employment in the territorial jurisdiction of the local union, of which $1 is remitted to the International Association. They must also pay a working assessment of $1 per day to Local 483, which both members and non-members must pay.

Plaintiffs are journeymen members of out-of-state local unions of the International Association who have worked for many years in the area under the jurisdiction of Local 483 and secure employment under the referral system conducted in the local union's hiring hall. In or about May 1971, plaintiffs, with the exception of Joseph Mahan, individually applied to Local 483 for acceptance of their transfers for membership. All applications for transfer were denied by the executive committee of Local 483. No reason was given for rejection of the applications. Thereafter, pursuant to the international constitution, they appealed to the international general executive board. They were subsequently notified that their appeals were being held in abeyance. Joseph Mahan's application for transfer of membership was not made until later and it was rejected by Local 483 without a reason on April 6, 1972. Mahan did not appeal to the international union but joined with the other plaintiffs in the action brought in the Chancery Division.

The international constitution, which governs all local unions and their members, provides for the transfer of membership from one local union to another. It has been periodically revised. The 1960 constitution mandated acceptance by a local union of all transfer requests. The 1964 constitution provided that a local union by a majority vote of its members could accept or reject transfer applications. The 1968 constitution, which governs plaintiffs' requests for transfer, eliminated the necessity of a vote by the entire membership of the local union and delegated the acceptance or rejection of transfers to its executive committee.

The constitution requires that a member who desires to transfer must be a member of the International Association for at least two years. In order to transfer a member must first apply to his local union for a clearance card which is issued to members in good standing. Article 21, section 31 of the constitution provides:

Thereafter a member obtaining a clearance card must present the same to the Local Union into which he desires to transfer, for acceptance by it, and the matter shall be referred to the Executive Committee of the local union which shall accept or reject the clearance card within the discretion of the Executive Committee. The decision of the Executive Committee of either acceptance or rejection of the clearance card shall be subject to review by the General Executive Board.

The record indicates that since 1965 Local 483 has only admitted to membership ten journeymen, none of whom had served in the local union's apprenticeship program. All were sons of journeymen members of Local 483. Five were admitted directly as members. Four were transferred from outside locals and one from a shop union. The transferees were admitted under the provisions of the 1964 constitution which required acceptance by a majority vote of members of the local union. No transfers have been accepted under the provisions of the 1968 constitution.

According to testimony elicited from members of the local union's executive committee plaintiffs' applications were summarily rejected without any discussion whatsoever. It was stipulated by Local 483 that no journeymen have been admitted since the discretion was given to the executive committee under the 1968 constitution and that this was a calculated, purposeful decision because it was determined that new members would be admitted only through an apprenticeship program which was begun in 1964.

John H. Lyons, the general president of the International Association and a member of International's general executive board, in his pretrial deposition stated that under the international constitution a local union does not have the right to reject transfer applications without any discussion or reason. He further stated that a local union must have an explanation for such rejections because on appeal the general executive board must determine the reasonableness of the local union's action in light of the discretion granted to the local union under the constitution and to assure uniform treatment of union members. Lyons admitted that the general executive

board had not passed on the merits of plaintiffs' appeals but held them in abeyance pending the outcome of litigation in a similar proceeding.

The trial court found that the practice of Local 483 in rejecting all applications for transfer of membership constituted an abuse of discretion within the meaning of section 31 of the international constitution. However, based on the ruling of *Mayer v. Journeymen Stonecutters' Association*, 47 *N. J. Eq.* 519 (Ch. 1890), the court concluded that it lacked the power to compel Local 483 to admit plaintiffs as transferees.

Plaintiffs contend that the actions of Local 483 and the International Association in failing to establish criteria, standards or guidelines for the exercise of discretion under section 31 of the constitution, coupled with the refusal of Local 483 to transfer plaintiffs or any other qualified members into the local union, constituted an unreasonable, arbitrary, capricious and discriminatory practice in violation of the constitution. They claim that having found Local 483 abused its discretion in rejecting their transfer applications the trial court should have fashioned a remedy by directing that they be accepted as members of the local union. They assert that the court's reliance on *Mayer* was misplaced. They further contend that Mayer no longer represents the law in this State.

In *Mayer* the plaintiffs, who were journeymen stonecutters, requested the court to require the defendant association to admit them as members upon payment of dues and fulfilling the rules imposed upon other members. Plaintiffs were outsiders, strangers to the union. The association had determined not to admit any new members for a year and rejected plaintiffs' applications. Thereafter plaintiffs were refused employment by master stonecutters because they were not members of the association. They alleged that as a consequence of their exclusion by the association they had been deprived of the power of exercising their trade. The court held that no person has "any abstract right to be admitted" to membership in a voluntary association and that the court

did not have the power to require the admission of any person to original membership in any such association when it had been denied.

While courts have traditionally refrained from interfering with the internal affairs of a union, they have not hesitated to intervene when provisions of a union constitution are repugnant to public policy and exceed limits on the equal opportunity to work guaranteed by the state and federal constitutions, *Cameron v. International, etc., Union No. 384,* 118 *N. J. Eq.* 11 (E. & A. 1935), or in ordering the reinstatement of members wrongfully expelled, *Fleming v. Moving Picture, etc., Local No. 244,* 124 *N. J. Eq.* 269 (E. & A. 1938); *Lo Bianco v. Cushing,* 117 *N. J. Eq.* 593 (Ch. 1935), aff'd *per curiam,* 119 *N. J. Eq.* 377 (E. & A. 1936), and in requiring the acceptance of a technically competent applicant as a member where there is a restricted admissions policy and a closed shop agreement with employers in the area. *Wilson v. Newspaper, etc., Union,* 123 *N. J. Eq.* 347 (Ch. 1938).

The exclusion of qualified persons from membership in an organization where such membership was a matter of economic necessity was dealt with by this Court in *Falcone v. Middlesex Co. Medical Soc.,* 34 *N. J.* 582 (1961). In that case the Court held that a county medical society could not arbitrarily exclude a duly licensed and qualified physician from membership. The Court was influenced by the facts that the rejection caused the applicant serious adverse economic and professional effects and that the case did not involve a social or fraternal organization; rather it dealt with an "economic necessity." The Court said that:

[i]n dealing with such an organization, the court must be particularly alert to the need for truly protecting the public welfare and advancing the interests of justice by reasonably safeguarding the individual's opportunity for earning a livelihood while not impairing the proper standings and objectives of the organization. (at 592)

Since the decision in *Falcone* the Court has reiterated its basic principles. In *Greisman v. Newcomb Hospital,* 40 *N. J.*

389 (1963), the Court noted that the hospital's power to pass on staff membership applications is a fiduciary power and thus an applicant was entitled to be evaluated on his individual merits without regard to certain restrictive by-law requirements.

The similarity between a union and a county medical society, such as the one in *Falcone,* can be seen by the fact that they both affect the economic welfare of the individual applicant and they both have public importance. The California Supreme Court has recognized that membership in a union means more than mere personal or social accommodation and that exclusion from union membership involves significant economic hardship. *Directors Guild of America, Inc. v. Superior Court,* 64 Cal. 2d 42, 48 *Cal. Rptr.* 710, 717, 409 *P.* 2d 934, 941 (1966).

Much could be written concerning the growth of the labor movement during the 85 years since *Mayer* was decided and the power that labor unions may now exercise which affects the right of a person to work for a living. However, since we are satisfied that the *Mayer* decision does not apply to the instant case, we leave to a later day the question of the continued viability of the ruling enunciated in that case.

█ *Mayer v. Journeymen Stonecutters' Association, supra,* is clearly distinguishable from the instant case. In *Mayer* the plaintiffs were strangers, non-members of the union, while here plaintiffs were members of the international union. A distinction must be drawn between one applying for membership who has no property or contract rights and a party to a constitution which is a binding agreement between the international union, its members, and the local unions which are affiliated therewith. Judicial intervention in the internal affairs of a union will be exerted for the protection of a property right or the enforcement of a contract as expressed in the union's constitution. *Harker v. McKissock,* 7 *N. J.* 323, 328 (1951). As the Court stated in *Mayer, supra,* "courts exist to protect rights and where the

right has once attached they will interfere to prevent its violation." 47 *N. J. Eq.* at 524.

The record demonstrates that Local 483 has consistently refused to accept transfers of other members of the International Association unless they were relatives of members of the local union. This policy existed even when the acceptance of transfers was mandatory under the 1960 constitution.[1] Despite the finding of the trial court that the rejection of plaintiffs' transfers was an abuse of discretion, defendant Local 483 still maintains that the discretion granted to the executive committee is unlimited and that a decision to reject may be rendered without any basis whatsoever. We do not agree.

The union constitution clearly contemplates that journeymen members of the international union should be permitted to transfer to another local union. It prescribes the qualifications required of members who desire to transfer and sets forth the procedure to be followed to effect such transfer. It further provides that such members shall not seek employment, be employed, or remain at work at his trade within the territorial jurisdiction of another local union without its consent. To obtain that consent the member's clearance card must be accepted by the local union admitting him to membership or he must pay travel dues to the local union and receive a receipt therefor. If the member fails to comply with such provisions he is subject to penalties provided by the constitution.

As previously indicated the wages, hours of work and working conditions of union members who are not members of the local union are fixed by the collective bargaining contracts negotiated by the local union and non-members have

---

[1] *Ferger v. Local 483 of Internat'l Ass'n of Bridge, etc. Wkrs.*, 238 *F. Supp.* 1016 (D. N. J. 1964), aff'd 342 *F.* 2d 430 (3 Cir. 1965), *cert.* den. 384 *U. S.* 908, 86 S. Ct. 1346, 16 L. Ed. 2d 361 (1966) and *Ferger v. Local 483*, 94 *N. J. Super.* 554 (Ch. Div. 1967), aff'd 97 *N. J. Super.* 505 (App. Div. 1967).

no voice whatsoever in approving or disapproving such contracts. Thus it is clear that membership in the local union is a matter which critically affects a person's ability to earn a living. It follows, therefore, that a local union should not arbitrarily preclude a competent journeyman, who is a member of the international union, from a transfer of membership without just cause.

The arbitrary rejection of plaintiffs' transfer applications by Local 483 in this case, admittedly without consideration of the plaintiffs' qualifications or any discussion by the local union's executive committee or a statement of the reasons for such rejection, clearly was not a proper exercise of discretion contemplated by the union constitution. The need for a statement of reasons for rejection by the executive committee is self-evident. It is a necessary prerequisite for a fair and impartial review by the international general executive board. This was supported by the testimony of Lyons, the president of the International Association.

It is not within the province of this Court to formulate guidelines for the exercise of discretion by the local union. However, since that discretion is appealable it follows that there should be some standards or criteria for the exercise thereof.

Plaintiffs, as journeymen members of the international union, who are economically dependent upon the collective bargaining contracts negotiated by Local 483, are entitled to have their transfer applications fairly and properly considered. A rejection of an application must have a reasonable basis. The transfer of such journeymen members should not be barred because of a decision to restrict membership to those who have participated in an apprenticeship program.

Fairness and justice require that the executive committee of Local 483 reconsider plaintiffs' applications in accordance with the views we have expressed. If an application is rejected the reasons therefor should be stated so

that the international general executive board can determine whether it was a reasonable exercise of discretion.

One other matter requires a brief discussion. Defendants contend that plaintiff Joseph Mahan should have exhausted his remedies within the union by appealing his rejection to the international general executive board and having failed to do so is not entitled to judicial relief. While the trial court made no specific finding on this issue we conclude that it lacks merit.

It is well recognized that members of a union will ordinarily be required to avail themselves of the internal remedies provided by its constitution. However, the doctrine of exhaustion of remedies will not be applied where it is apparent that the relief sought is futile, illusory or vain. *Naylor v. Harkins*, 11 *N. J.* 435, 444 (1953). Mahan's application to transfer was rejected by Local 483 a year after the other plaintiffs were rejected and their appeals had been unsuccessful. It is obvious that an appeal by Mahan to the international reviewing board would have been futile.

The judgment denying plaintiffs' judicial relief is reversed. The case is remanded to the trial court with directions that an order be entered requiring the local union to reconsider plaintiffs' applications in accordance with the views expressed in this opinion. In the event of a rejection the reasons therefor must be stated to provide a basis for a fair and impartial review by the international general executive board.

Reversed and remanded.

*For reversal and remandment*—Chief Justice HUGHES, Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge COLLESTER—7.

*For affirmance*—None.