(Slip Opinion) OCTOBER TERM, 2019 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RODRIGUEZ, AS CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF UNITED WESTERN BANCORP, INC. *v.* FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR UNITED WESTERN BANK

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 18–1269.   Argued December 3, 2019—Decided February 25, 2020

The Internal Revenue Service (IRS) allows an affiliated group of corporations to file a consolidated federal return. See 26 U. S. C. §1501. The IRS issues any refund as a single payment to the group's designated agent. The tax regulations say very little about how the group members should then distribute that refund among themselves. If a dispute arises and the members have no tax allocation agreement in place, federal courts normally turn to state law to resolve the distribution question. Some courts, however, have crafted their own federal common law rule, known as the *Bob Richards* rule. See *In re Bob Richards Chrysler-Plymouth Corp.,* 473 F. 2d 262. The rule initially provided that, in the absence of an agreement, a refund belongs to the group member responsible for the losses that led to it. But it has since evolved, in some jurisdictions, into a general rule that is always followed unless an agreement unambiguously specifies a different result. Soon after United Western Bank suffered huge losses, its parent, United Western Bancorp, Inc., was forced into bankruptcy. When the IRS issued the group a $4 million tax refund, the bank's receiver, respondent Federal Deposit Insurance Corporation (FDIC), and the parent corporation's bankruptcy trustee, petitioner Simon Rodriguez, each sought to claim it. The dispute wound its way through a bankruptcy court and a federal district court before the Tenth Circuit examined the parties' tax allocation agreement, applied the more expansive version of *Bob Richards*, and ruled for the FDIC.

*Held*: The *Bob Richards* rule is not a legitimate exercise of federal common lawmaking.  Federal judges may appropriately craft the rule of decision in only limited areas, *Sosa* v. *Alvarez-Machain,* 542 U. S. 692, 729, and claiming a new area is subject to strict conditions.  One of the most basic is that federal common lawmaking must be "'necessary to protect uniquely federal interests.'"  *Texas Industries, Inc.* v. *Radcliff Materials, Inc.,* 451 U. S. 630, 640.  The *Bob Richards* rule has not satisfied this condition.  The federal courts applying and extending *Bob Richards* have not pointed to any significant federal interest sufficient to support the *Bob Richards* rule.  Nor have the parties in this case.  State law is well-equipped to handle disputes involving corporate property rights, even in cases, like this one, that involve federal bankruptcy and a tax dispute.  Whether this case might yield the same or a different result without *Bob Richards* is a matter the court of appeals may take up on remand.  Pp. 4–6.

914 F. 3d 1262, vacated and remanded.

    GORSUCH, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order that
corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 18–1269

SIMON E. RODRIGUEZ, AS CHAPTER 7 TRUSTEE FOR THE
BANKRUPTCY ESTATE OF UNITED WESTERN
BANCORP, INC., PETITIONER *v.* FEDERAL
DEPOSIT INSURANCE CORPORATION, AS
RECEIVER FOR UNITED WESTERN BANK

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT

[February 25, 2020]

JUSTICE GORSUCH delivered the opinion of the Court.

This case grows from a fight over a tax refund. But the question we face isn't who gets the money, only how to decide the dispute. Should federal courts rely on state law, together with any applicable federal rules, or should they devise their own federal common law test? To ask the question is nearly to answer it. The cases in which federal courts may engage in common lawmaking are few and far between. This is one of the cases that lie between.

The trouble here started when the United Western Bank hit hard times, entered receivership, and the Federal Deposit Insurance Corporation took the reins. Not long after that, the bank's parent, United Western Bancorp, Inc., faced its own problems and was forced into bankruptcy, led now by a trustee, Simon Rodriguez. When the Internal Revenue Service issued a $4 million tax refund, each of these newly assigned caretakers understandably sought to claim the money. Unable to resolve their differences, they

took the matter to court. The case wound its way through a bankruptcy court and a federal district court before eventually landing in the Tenth Circuit. At the end of it all, the court of appeals ruled for the FDIC, as receiver for the subsidiary bank, rather than for Mr. Rodriguez, as trustee for the corporate parent.

How could two separate corporate entities both claim entitlement to a single tax refund? For many years, the IRS has allowed an affiliated group of corporations to file a consolidated federal return. See 26 U. S. C. §1501. This serves as a convenience for the government and taxpayers alike. Unsurprisingly, though, a corporate group seeking to file a single return must comply with a host of regulations. See 26 U. S. C. §1502; 26 CFR §1.1502–0 *et seq.* (2019). These regulations are pretty punctilious about ensuring the government gets all the taxes due from corporate group members. See, *e.g.,* §1.1502–6. But when it comes to the distribution of refunds, the regulations say considerably less. They describe how the IRS will pay the group's designated agent a single refund. See §1.1502–77(d)(5). And they warn that the IRS's payment discharges the government's refund liability to all group members. *Ibid.* But how should the members distribute the money among themselves once the government sends it to their designated agent? On that, federal law says little.

To fill the gap, many corporate groups have developed "tax allocation agreements." These agreements usually specify what share of a group's tax liability each member will pay, along with the share of any tax refund each member will receive. But what if there is no tax allocation agreement? Or what if the group members dispute the meaning of the terms found in their agreement? Normally, courts would turn to state law to resolve questions like these. State law is replete with rules readymade for such tasks—rules for interpreting contracts, creating equitable trusts, avoiding unjust enrichment, and much more.

Some federal courts, however, have charted a different

course. They have crafted their own federal common law rule—one known to those who practice in the area as the *Bob Richards* rule, so named for the Ninth Circuit case from which it grew: *In re Bob Richards Chrysler-Plymouth Corp.*, 473 F. 2d 262 (1973). As initially conceived, the *Bob Richards* rule provided that, in the absence of a tax allocation agreement, a refund belongs to the group member responsible for the losses that led to it. See *id.,* at 265. With the passage of time, though, *Bob Richards* evolved. Now, in some jurisdictions, *Bob Richards* doesn't just supply a stopgap rule for situations when group members lack an allocation agreement. It represents a general rule always to be followed unless the parties' tax allocation agreement *unambiguously* specifies a different result.

At the urging of the FDIC and consistent with circuit precedent, the Tenth Circuit employed this more expansive version of *Bob Richards* in the case now before us. Because the parties did have a tax allocation agreement, the court of appeals explained, the question it faced was whether the agreement unambiguously deviated from *Bob Richards*'s default rule. *In re United Western Bancorp, Inc.*, 914 F. 3d 1262, 1269–1270 (2019). After laying out this "analytical framework" for decision, *id.,* at 1269 (emphasis deleted), the court proceeded to hold that the FDIC, as receiver for the bank, owned the tax refund.

Not all circuits, however, follow *Bob Richards.* The Sixth Circuit, for example, has observed that "federal common law constitutes an unusual exercise of lawmaking which should be indulged . . . only when there is a significant conflict between some federal policy or interest and the use of state law." *FDIC* v. *AmFin Financial Corp.*, 757 F. 3d 530, 535 (2014) (internal quotation marks omitted). In the Sixth Circuit's view, courts employing *Bob Richards* have simply "bypassed th[is] threshold question." 757 F. 3d, at 536. And any fair examination of it, the Sixth Circuit has sub-

mitted, reveals no conflict that might justify resort to federal common law. *Ibid.* We took this case to decide *Bob Richards*'s fate. 588 U. S. ___ (2019)

Judicial lawmaking in the form of federal common law plays a necessarily modest role under a Constitution that vests the federal government's "legislative Powers" in Congress and reserves most other regulatory authority to the States. See Art. I, §1; Amdt. 10. As this Court has put it, there is "no federal general common law." *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, 78 (1938). Instead, only limited areas exist in which federal judges may appropriately craft the rule of decision. *Sosa* v. *Alvarez-Machain*, 542 U. S. 692, 729 (2004). These areas have included admiralty disputes and certain controversies between States. See, *e.g., Norfolk Southern R. Co.* v. *James N. Kirby*, *Pty Ltd.*, 543 U. S. 14, 23 (2004); *Hinderlider* v. *La Plata River & Cherry Creek Ditch Co.*, 304 U. S. 92, 110 (1938). In contexts like these, federal common law often plays an important role. But before federal judges may claim a new area for common lawmaking, strict conditions must be satisfied. The Sixth Circuit correctly identified one of the most basic: In the absence of congressional authorization, common lawmaking must be "'necessary to protect uniquely federal interests.'" *Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U. S. 630, 640 (1981) (quoting *Banco Nacional de Cuba* v. *Sabbatino*, 376 U. S. 398, 426 (1964)).

Nothing like that exists here. The federal government may have an interest in regulating how it *receives* taxes from corporate groups. See, *e.g.,* 26 CFR §§1.1502–6, –12, –13. The government also may have an interest in regulating the *delivery* of any tax refund due a corporate group. For example and as we've seen, the government may wish to ensure that others in the group have no recourse against federal coffers once it pays the group's designated agent. See §1.1502–77(d)(5). But what unique interest could the federal government have in determining how a consolidated

corporate tax refund, once paid to a designated agent, is *distributed* among group members?

The Sixth Circuit correctly observed that *Bob Richards* offered no answer—it just bypassed the question. Nor have the courts applying and extending *Bob Richards* provided satisfactory answers of their own. Even the FDIC, which advocated for the *Bob Richards* rule in the Tenth Circuit, failed to point that court to any unique federal interest the rule might protect. In this Court, the FDIC, now represented by the Solicitor General, has gone a step further, expressly conceding that federal courts "should not apply a federal common law rule to . . . put a thumb on . . . the scale" when deciding which corporate group member owns some or all of a consolidated refund. Tr. of Oral Arg. 40; see also *id.*, at 32–36.

Understandably too. Corporations are generally "creatures of state law," *Cort* v. *Ash*, 422 U. S. 66, 84 (1975), and state law is well equipped to handle disputes involving corporate property rights. That cases like the one now before us happen to involve corporate property rights in the context of a federal bankruptcy and a tax dispute doesn't change much. As this Court has long recognized, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner* v. *United States*, 440 U. S. 48, 54 (1979). So too with the Internal Revenue Code—it generally "'creates no property rights.'" *United States* v. *National Bank of Commerce*, 472 U. S. 713, 722 (1985) (quoting *United States* v. *Bess*, 357 U. S. 51, 55 (1958)). If special exceptions to these usual rules sometimes might be warranted, no one has explained why the distribution of a consolidated corporate tax refund should be among them.

Even if the Tenth Circuit's reliance on *Bob Richards*'s analytical framework was mistaken, the FDIC suggests we might affirm the court's judgment in this case anyway. The

FDIC points out that the court of appeals proceeded to consult applicable state law—and the FDIC assures us its result follows naturally from state law. The FDIC also suggests that the IRS regulations concerning the appointment and duties of a corporate group's agent found in 26 CFR §§1.1502–77(a) and (d) tend to support the court of appeals's judgment. Unsurprisingly, Mr. Rodriguez disagrees with these assessments and contends that, absent *Bob Richards*, the Tenth Circuit would have reached a different outcome.

Who is right about all this we do not decide. Some, maybe many, cases will come out the same way under state law or *Bob Richards*. But we did not take this case to decide how this case should be resolved under state law or to determine how IRS regulations might interact with state law. We took this case only to underscore the care federal courts should exercise before taking up an invitation to try their hand at common lawmaking. *Bob Richards* made the mistake of moving too quickly past important threshold questions at the heart of our separation of powers. It supplies no rule of decision, only a cautionary tale. Whether this case might yield the same or a different result without *Bob Richards* is a matter the court of appeals may consider on remand. See, *e.g., Conkright* v. *Frommert*, 559 U. S. 506, 521–522 (2010); *Travelers Casualty & Surety Co. of America* v. *Pacific Gas & Elec. Co.*, 549 U. S. 443, 455–456 (2007); *Gonzales* v. *Duenas-Alvarez*, 549 U. S. 183, 194 (2007).

The judgment of the court of appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*