**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 20-3638

MATRIX DISTRIBUTORS, INC.;
OAK DRUGS, INC.;
PRIMED PHARMACEUTICALS, LLC

v.

NATIONAL ASSOCIATION OF BOARDS OF
PHARMACY; OPTUMRX, INC.

Oak Drugs, Inc.; PriMed Pharmaceuticals, LLC,

Appellants

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-18-cv-17462)
District Judge: Honorable Kevin McNulty

Argued on January 10, 2022

Before: AMBRO, BIBAS, and ROTH, <u>Circuit Judges</u>

(Opinion Filed: May 19, 2022)

Brian M. Culnan [**Argued**]
Linda J. Clark
Brad M. Gallagher
Barclay Damon LLP
80 State Street
Albany, New York 12207
        Counsel for Appellants Oak Drugs, Inc.;
        PriMed Pharmaceuticals, LLC

Brian E. Casey [**Argued**]
Barnes & Thornburg LLP
201 S. Main Street, Suite 400
South Bend, IN 46601

Regina S.E. Murphy
1000 N. West Street, Suite 1500
Wilmington, DE 19801
        Counsel for Appellee National Association of
        Boards of Pharmacy

Jason R. Asmus [**Argued**]
Taft Stettinius & Hollister LLP
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Francis X. Manning
Stradley Ronon Stevens & Young, LLP
LibertyView
457 Haddonfield Road, Suite 100
Cherry Hill, NJ 08002
        Counsel for Appellee OptumRx, Inc.

## OPINION

AMBRO, Circuit Judge

Not all wrongs amount to constitutional violations. Indeed, most constitutional amendments protect only against wrongs caused by the states or the federal government. And the main cause of action for seeking damages for constitutional violations, 42 U.S.C. § 1983, contains a "state actor" requirement, allowing suit only against those who can be fairly said to be acting for the state itself.

The plaintiffs fail to meet this requirement here. Wholesale pharmaceutical distributors PriMed Pharmaceuticals, LLC and Oak Drugs, Inc. have sued two private entities, OptumRx and National Association of Boards of Pharmacy, under § 1983 for alleged violations of constitutional and federal law. Though they undoubtably have alleged real harm caused by OptumRx and NABP's conduct, their claims are missing an essential element: a state actor. Because they have failed to allege sufficiently that NABP or OptumRx were acting for a particular state, any wrong the plaintiffs suffered does not amount to a constitutional violation, nor can they sue under § 1983. The District Court was thus correct to dismiss those claims.

The plaintiffs' remaining claims also largely lack merit. But because we believe that PriMed and Oak Drugs plausibly allege NABP violated their due process right under New Jersey

3

common law, we will affirm the District Court's judgment in part and reverse in part.

## I.  Background

The pharmaceutical market involves many interconnected players.  In the production and distribution field are the manufacturers, wholesale distributors, and the pharmacies.  Among distributors, there are three large "primary" entities who supply drugs to the nationwide pharmaceutical chains like CVS and Walgreens.  Smaller secondary suppliers distribute drugs to independent pharmacies that don't meet the minimum purchasing requirements of primary distributors.

On the insurance side, there are insurers and pharmacy benefit managers.  The lesser-known pharmacy benefit managers are the entities that administer the prescription benefits of the insurance plans.  These entities are middle-men between pharmacies and insurers, contracting with various pharmacies to serve patients covered by the benefit managers' insurance plans.

Finally, in the regulatory and licensing realm, there is a mix of public and private entities.  Congress, of course, has a hand in regulating the drug market through various statutes, including the Drug Supply Chain Security Act, 21 U.S.C. § 360eee *et seq*.  States handle pharmaceutical licensing, including licensing wholesale pharmaceutical suppliers.  And private entities help set uniform professional standards for pharmacies and pharmaceutical distributors.

This case involves players from each of these sectors. The plaintiffs, PriMed Pharmaceuticals and Oak Drugs, are small secondary wholesale distributors. PriMed is licensed in 39 states and provides pharmaceutical products to about 2,000 independent pharmacies, while Oak Drugs serves 145 independent pharmacies in the 20 states in which it is licensed. Nearly 90% of the independent pharmacies they serve have contracts with United Healthcare's pharmacy benefit manager, OptumRx (a defendant here).

OptumRx requires its network pharmacies to purchase drugs only from wholesale distributors accredited by the other defendant, National Association of Boards of Pharmacy. NABP is a nonprofit membership association committed to "provid[ing] for interstate transfer in pharmacist licensure" and "improv[ing] the standards of pharmacist education, licensure, and practice." Doc. 158 (Am. Compl.) ¶¶ 14–15. Its membership consists of the 50 state boards of pharmacy and the boards of pharmacy of the District of Columbia, the U.S. territories, and the provinces of Canada. And it offers a range of services to its members, including educational resources, licensing exams, a database of information on pharmacists, and—particularly relevant here—the "Verified Accredited Wholesale Distributor" program.

The VAWD accreditation program is at the core of this case. When OptumRx announced its network pharmacies could only purchase from VAWD-accredited distributors, PriMed and Oak Drugs applied for accreditation. But PriMed's first two applications came back "canceled" because it did not satisfy NABP's accreditation criteria. Oak Drugs' initial application was also canceled with little explanation. Each distributor eventually received accreditation on its next

5

attempt. But according to PriMed and Oak Drugs, it was already too late. They had lost dozens of customers because of their struggles to obtain VAWD accreditation.

PriMed and Oak Drugs believe NABP violated their rights to due process by canceling their applications with little explanation and with no opportunity to challenge the result. And, because NABP's criteria for accreditation were more stringent than the federal Drug Supply Chain Security Act's requirements for wholesale drug distributors, they contend NABP (by implementing the criteria) and OptumRx (by requiring compliance with the criteria) violated both the Act and the Supremacy Clause of the Constitution. They thus sued NABP and OptumRx in New Jersey state court, and the defendants removed the case to federal court soon after. The distributors' amended complaint lodged a litany of claims against the defendants, including several § 1983 claims, a claim against NABP for violating the common law right to due process, and various tortious interference claims against OptumRx.

NABP and OptumRx moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the District Court granted the motion.

## II. Standard of Review

We exercise plenary review over the District Court's grant of a Rule 12(b)(6) motion to dismiss. *Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010). We accept the complaint's factual allegations as true and construe these allegations in the light most favorable to the plaintiffs. *Id*.

6

### III.  Discussion[1]

#### A.  The § 1983 Claims

The main theme of PriMed and Oak Drugs' complaint is that NABP and OptumRx violated federal law, whether that be the Due Process Clause, the Supremacy Clause, or the Drug Supply Chain Security Act.  But their cause of action, 42 U.S.C. § 1983, is not a catch-all provision offering remedies for every violation of federal law.  Instead, its narrow scope offers relief only against a person who violates federal law while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."  42 U.S.C. § 1983.  This requirement, known in shorthand as the "state-actor doctrine," thus allows suit only against those who act on behalf of a state.  *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017).

Usually that's not a difficult obstacle to surmount.  A government employee (like a police officer) and a public entity

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.  Though PriMed and Oak Drugs at first appealed an order dismissing the complaint without prejudice and with leave to amend (which is not usually a final order), they subsequently filed a notice asking the Court to issue a "final, reviewable order of dismissal in this action."  Appx. at 169.  Their notice expressed a "clear and unequivocal intent to decline amendment and immediately appeal that leaves no doubt or ambiguity."  *Weber v. McGrogan*, 939 F.3d 232, 240 (3d Cir. 2019).  Now that the Court has entered a final dismissal, we may exercise jurisdiction over this appeal.  *Id.*

(like a state university) are classic defendants in § 1983 cases. But the analysis becomes trickier when the defendant is a private entity, as both NABP and OptumRx are. While private parties still may be "state actors," the plaintiff must show "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* (emphasis omitted) (internal quotation marks omitted). In other words, a plaintiff must show such a tight connection between a state and the challenged action that the state could be held responsible for that action.

Such connection between a state and a private entity is difficult to show, particularly when it hinges on the state's membership in a larger nationwide organization. Take *NCAA v. Tarkanian*, 488 U.S. 179 (1988). There, the University of Nevada, Las Vegas's former basketball coach, Jerry Tarkanian, tried to sue the NCAA under § 1983 after he was suspended by the University for violating NCAA rules. *Id.* at 185–88. To determine if he could bring a § 1983 suit, the Supreme Court considered whether the University's membership in the NCAA and its adoption of its rules turned the latter, a private organization, into a state actor. *Id.* at 193–95. It held not. To be sure, the University was an NCAA member and thus the State of Nevada "had some impact on the NCAA's policy determinations." *Id.* at 193. But it was just one of "several hundred other public and private member institutions" that "similarly affected those policies." *Id.* Could the NCAA truly be said to be acting "under color of Nevada law" when it adopted those standards? No—the "source of the legislation adopted by the NCAA [was] not Nevada but the collective membership, speaking through an organization that is independent of any particular state." *Id.*

8

This is not to say it is impossible to show a collective membership organization is operating under color of a particular state's laws. In *Brentwood Academy v. Tennessee Secondary School Athletic Association*, for example, the Supreme Court decided a private collective membership organization composed of public and private high schools in Tennessee was a state actor. 531 U.S. 288, 290–91 (2001). Unlike in *Tarkanian*, the plaintiff there managed to show a tight connection between the TSSAA and the State of Tennessee. *Id.* at 291. This task was simpler than in *Tarkanian* because, although the TSSAA was made up of public and private school members, the organization's "member public schools [were] all within a single State." *Id.* at 298. So, with only one jurisdiction involved, the plaintiffs could trace a direct connection between Tennessee and the athletic association's policies.

Here, to state a § 1983 claim, PriMed and Oak Drugs must allege sufficient facts to show that NABP is a state actor.[2] Because NABP (like the NCAA in *Tarkanian*) is a nationwide membership organization—including not only the boards of pharmacy in each of the 50 states, but also the boards from the District of Columbia, the U.S. territories, and the provinces of Canada—any plaintiff would face an uphill battle showing the NABP acted under color of any particular state or states' laws when it adopted and administered the VAWD program. But PriMed and Oak Drugs don't even try. Instead, their complaint focuses on the general public character of the NABP. It broadly alleges that all NABP's active members are the state

---

[2] The plaintiffs conceded at oral argument that if NABP is not a state actor, neither is OptumRx. We therefore focus our state-actor analysis only on NABP.

boards of pharmacy, that members of the state boards of pharmacy are part of NABP's leadership, that the states benefit from NABP's programming and licensing, and that NABP's revenue mainly stems from the services it offers the states. But it contains no specific allegations connecting any particular state or states to "the challenged action"—denial of VAWD accreditation—sufficient to show NABP is operating under color of state law.[3] *See Borrell*, 870 F.3d at 160 (emphasis omitted) (internal quotation marks omitted). The District

---

[3] We also note that NABP is not a state actor just because the plaintiffs allege states used VAWD accreditation in various ways to inform their licensing decisions. We confronted a similar argument in *McKeesport Hospital v. Accreditation Council for Graduate Medical Education (ACGME)*, where the plaintiff hospital tried to argue that a private accrediting body's decision to withdraw accreditation of the hospital's residency program was "state action." 24 F.3d 519, 523 (3d Cir. 1994). We held that although the Pennsylvania State Board of Medicine (a state entity) used ACGME's accreditation decisions to inform its approval of medical training facilities, the Board, not the ACGME, "remain[ed] the state actor." *Id.* at 524. "Merely because the state Board deems its obligation met by following the ACGME's accreditation decisions does not imbue the ACGME with the authority of the state nor shift the responsibility from the state Board to the ACGME." *Id.* So too here. The states may formally use the NABP's VAWD program in some fashion, but this allegation alone is not enough to show the states delegated their licensing responsibilities to NABP and made it into a state actor.

Court was therefore correct to dismiss all PriMed and Oak Drugs' § 1983 claims for failure to state a claim.[4]

## B. Common Law Due Process Claims

Pivoting from their constitutional arguments, PriMed and Oak Drugs next contend NABP must comply with due process requirements because, under federal and New Jersey common law, "quasi-public" entities must provide fair procedures when making accrediting decisions. Their due process arguments fare slightly better here.

We begin with the federal common law. It is well established that there is "no federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). But "limited areas exist in which federal judges may appropriately craft the rule of decision." *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713, 717 (2020). PriMed and Oak Drugs insist federal courts have crafted a federal common law right to due process "as a check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing." Appellant Br. at 35 (quoting *Thomas M. Cooley L. Sch. v. ABA*, 459 F.3d 705, 712 (6th Cir. 2006)).

To be sure, some of our sister circuits have recognized a federal common law due process right. But the cases PriMed and Oak Drugs cite have a specific context: challenges to a higher education accreditation decision by an accrediting

---

[4] Because the plaintiffs cannot meet the threshold showing that NABP and OptumRx are state actors, we do not reach the merits of their constitutional and federal law claims.

agency.[5]  This makes sense.  When deciding whether to craft federal common law, "one of the most basic" conditions is that the rule is "necessary to protect uniquely federal interests." *Rodriguez*, 140 S. Ct. at 717 (quoting *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)).  And those interests are present in the college accreditation agency cases.  Courts have mentioned several federal hooks—the Department of Education's involvement in approving accrediting agencies and Title IV funding depending on accreditation, to name a few—to justify creating federal common law.  *See, e.g.*, *Pro. Massage Training Ctr. (PMTC) v. Accreditation All. of Career Sch. & Colls.*, 781 F.3d 161, 170–71 (4th Cir. 2015).  Congress has also given federal courts exclusive jurisdiction over any action brought by a school challenging an accreditation decision made by a Department of Education-approved accrediting agency.  *See id.*; 20 U.S.C. § 1099b(f).  So, the courts have reasoned, it would "make little sense" to apply state common law to claims that could not be heard in state court.  *Cooley*, 459 F.3d at 712; *see also PMTC*, 781 F.3d at 170.

Unlike the school accreditation cases, here PriMed and Oak Drugs identify no "uniquely federal interest[]" that would justify expanding federal common law to govern accreditation of pharmaceutical distributors.  *Rodriguez*, 140 S. Ct. at 717 (internal quotation marks omitted).  There is no allegation, for

---

[5] PriMed and Oak Drugs cite one case that does not deal with college accreditation, *Hospital v. Accreditation Council for Graduate Medical Education*, 24 F.3d 519 (3d Cir. 1994).  But they fail to mention the only discussion of the federal common law due process right in that case was in the concurrence.  *See id.* at 534–35 (Becker, J., concurring).

example, that the federal Government participates in approving accrediting agencies like NABP, or that VAWD accreditation is required for PriMed and Oak Drugs to receive federal funding. There may, of course, be other ways for them to show a uniquely federal interest, but they do not try to do so here. So we will not consider whether NABP violated federal common law due process standards.

Next, New Jersey common law. In a handful of cases, the New Jersey Supreme Court has recognized a right to judicial review when quasi-public associations have improperly excluded or expelled members. For instance, in *Falcone v. Middlesex County Medical Society*, the Court determined a medical society improperly excluded a doctor from membership for reasons that were "patently arbitrary and unreasonable and beyond the pale of the law." 170 A.2d 791, 800 (N.J. 1961). Although the plaintiff "received a full medical course" at an accredited school of osteopathy and had "an unrestricted license to practice medicine and surgery" in New Jersey, he was barred from membership because he didn't meet the society's unwritten requirement that applicants attend four years at a medical college approved by the American Medical Association. *Id.* at 793–94, 800.

The Court was reluctant to interfere with the "internal affairs of membership associations," *id.* at 796, but it did so for a few reasons. For one, the medical society's "declaration of [the doctor's] ineligibility and its refusal to admit him to membership . . . had seriously adverse economic and professional effects on Dr. Falcone." *Id.* at 794. He was let go from the staff of two hospitals because they, "like other hospitals in the area," required doctors to be members of the society. *Id.* The "virtual monopoly" that the society had over

13

the hospitals meant that Falcone could not "successfully continue his practice"; to earn a livelihood, he needed "to belong to the local society." *Id.* (internal quotation marks omitted). Another factor was that the society was an association "with which the public is highly concerned and which engages in activities vitally affecting the health and welfare of the people." *Id.* at 799. So the Court needed to step in to limit the society's "unbridled" power to exclude a doctor from a profession based on arbitrary criteria. *Id.*; *see also Matthews v. Bay Head Improv. Ass'n*, 471 A.2d 355, 366 (N.J. 1984) ("The general rule is that courts will not compel admission to a voluntary association," but when "an organization is quasi-public, its power to exclude must be reasonably and lawfully exercised in furtherance of the public welfare related to its public characteristics."); *Moore v. Loc. Union No. 483, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, AFL-CIO*, 334 A.2d 1, 5–6 (N.J. 1975) (reviewing a union's "arbitrary" refusal to accept transferring members because union membership "affect[s] the economic welfare of the individual applicant" and the union has "public importance").

Here the District Court dismissed the plaintiffs' New Jersey common law due process claim because the state courts had all recognized this "right in the context of associations' exclusion or discipline of *members*." Dist. Ct. Op. at 26 (emphasis in original). PriMed and Oak Drugs were "not members of NABP and do not seek membership." *Id.* The plaintiffs pointed to "no New Jersey case . . . in which a court recognized that common-law due process extends to accreditation decisions like NABP's," so the Court refused to expand state law beyond what was "foreshadowed by state

14

precedent." *Id*. (quoting *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002)).

While the District Court was right to be cautious, we are not convinced PriMed and Oak Drugs' claim moves the needle "in ways not foreshadowed" by the New Jersey Supreme Court. *Beretta*, 277 F.3d at 421. Indeed, if we take the plaintiffs' allegations as true and "construe the amended complaint in the light most favorable to [them]," *Newman*, 617 F.3d at 779, as we must, this case bears a strong resemblance to *Falcone*.

The complaint plausibly alleges NABP is a "quasi-public" association because (1) it is "dedicated . . . to the vital public use" of (among other things) "improv[ing] the standards of pharmacist education, licensure, and practice," *see Matthews*, 471 A.2d at 366 (internal quotation marks omitted); Am. Compl. ¶ 15, and (2) it has "enjoyed monopoly power with respect to pharmaceutical wholesale distributor accreditation" since establishing the VAWD accreditation program, Am. Compl. ¶ 337; *see Matthews*, 471 A.2d at 366; *Falcone* 170 A.2d at 799.

And, as in *Falcone*, the plaintiffs allege NABP's denial of accreditation has "had seriously adverse economic and professional effects on [them]." 170 A.2d at 794; *see* Am. Compl. ¶¶ 257–70. There, Dr. Falcone could not work for any New Jersey hospital absent membership in the County Medical Society. And here, the plaintiffs allege they were cut off from serving most pharmacies nationwide because OptumRx required pharmacies to source only from VAWD-accredited distributors. Am. Compl. ¶ 18 ("OptumRx maintains a nationwide network of approximately 67,000 pharmacies,

15

which is about the same as the total number of pharmacies located in the United States."). In both cases, the denial of membership or accreditation substantially limited the plaintiffs' ability to work in their chosen professions. That the necessary professional qualification was, in one case, membership in a medical society and, in the other, accreditation by a pharmaceutical association, is a distinction without a difference.

The final question, then, is whether the plaintiffs sufficiently alleged the cancelation of their applications was arbitrary. *See Falcone*, 170 A.2d at 800; *Matthews*, 471 A.2d at 367; *Moore*, 334 A.2d at 6. Though this is a close question, we think that, when construing the allegations in the plaintiffs' favor, they have met the low plausibility threshold. NABP sets out criteria for applicants to comply with before receiving accreditation. But PriMed and Oak Drugs suggest that, when evaluating their applications, NABP ignored evidence showing compliance with those criteria and canceled their accreditation applications by adopting an unreasonable and overbroad interpretation of certain criteria. If this is true, the plaintiffs may be able to show NABP's denial of accreditation was "patently arbitrary and unreasonable" conduct. *Falcone*, 170 A.2d at 800. We thus will reverse the dismissal of the plaintiffs' New Jersey common law due process claim and remand.[6]

---

[6] Judge Bibas would affirm on this issue. New Jersey has not yet recognized a due-process right for entities to challenge accreditation decisions made by nationwide organizations. Thus, recognizing that right here, he thinks, "expand[s] state law in ways not foreshadowed by state precedent." *Beretta*, 277 F.3d at 421.

### C. Tortious Interference Claims

PriMed and Oak Drugs' final claims focus on OptumRx. They suggest it interfered with their relationships with current and prospective customers by mandating its network pharmacies deal only with VAWD-accredited wholesalers.

A New Jersey tortious interference claim has four elements: (1) "a protected interest," (2) "malice," (3) "a reasonable likelihood that the interference caused the loss of the prospective gain," and (4) "resulting damages." *Vosough v. Kierce*, 97 A.3d 1150, 1159 (N.J. Super. Ct. App. Div. 2014) (internal quotation marks omitted). Malice means that "harm was inflicted intentionally and without justification or excuse." *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170 (N.J. 2001); *see also Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 422 (3d Cir. 2013) ("Under New Jersey law, a plaintiff must demonstrate interference with a contractual relationship that is knowing, intentional, and wrongful.").

The plaintiffs' complaint failed to allege malice adequately. When determining whether a defendant acted with malice, a court considers "whether the conduct was sanctioned by the rules of the game, for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury." *Lamorte*, 770 A.2d at 1170 (internal quotation marks omitted). But here, as the District Court noted, the complaint itself recognizes a "justification or excuse" for the VAWD requirement: OptumRx was "address[ing] concerns about its network pharmacies' sourcing of medications," and it decided to address those concerns by "'partnering with an accreditation' provider to have wholesale

17

distributors meet OptumRx guidelines and the standards of the accrediting agency." Am. Compl. ¶¶ 145–46; *see also* Dist. Ct. Op. at 30–31. And the plaintiffs have not plausibly alleged that OptumRx pursued this goal through means that were "fraudulent, dishonest, or illegal."[7] *Lamorte*, 770 A.2d at 1171. So we affirm dismissal of the tortious interference claims.

\*　　\*　　\*

Based on the allegations in the complaint, OptumRx's requirement that its network pharmacies contract only with VAWD-accredited distributors has certainly led to substantial business setbacks for PriMed and Oak Drugs. But the allegations in the complaint are insufficient to show that

---

[7] The plaintiffs suggest OptumRx deceived New York pharmacies because it didn't tell them the VAWD requirement was illegal under New York Public Health Law § 280-c(2)(i). That provision states: "When conducting an audit of a pharmacy's records, a pharmacy benefit manager shall . . . in the case of invoice audits, accept as validation invoices from any wholesaler registered with the department of education from which the pharmacy has purchased prescription drugs or, in the case of durable medical equipment or sickroom supplies, invoices from an authorized distributor other than a wholesaler." N.Y. Pub. Health L. § 280-c(2)(i). The District Court held, and we agree, that this argument is meritless. Because the statute just requires a pharmacy benefits manager to "accept an invoice from a registered wholesaler as sufficient proof that the transaction occurred[,] . . . it is hard to see how the statute has anything to do with a [pharmacy benefits manager's] decision to impose sourcing requirements in its contracts with pharmacies." Dist. Ct. Op. at 32.

18

federal law or New Jersey tortious interference law offer relief for these injuries. But because the plaintiffs have plausibly alleged NABP violated their right to due process under New Jersey's common law, they may proceed on that claim. For these reasons, we affirm in part and reverse in part.