**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 22-1073

OFFICER BRIAN ERRINGTON,

Appellant

v.

CITY OF READING, agent of READING POLICE DEPARTMENT; RICHARD
TORNIELLI, in his individual capacity and official capacity as Chief of Police, Reading
Police Department; ERIC DRIESBACH, in his individual capacity and official capacity
as Lieutenant for Reading Police Department; CHARLES MENGES, in his individual
capacity and official capacity as Sergeant for Reading Police Department; JOHN 1-10
DOES

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 5-21-cv-00118)
District Judge: Honorable Joseph F. Leeson, Jr.

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 14, 2022

Before: AMBRO, KRAUSE, and BIBAS, <u>Circuit Judges</u>
(Opinion filed: November 30, 2022)

OPINION*

---

*This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

**AMBRO**, <u>Circuit Judge</u>

Brian Errington was an officer with the Reading Police Department for fifteen years. In later years, he got involved in workplace disputes that led him to retire and sue his former colleagues for First Amendment retaliation. The District Court dismissed the complaint with prejudice in part because Errington did not plead an adverse employment action—a necessary component of a retaliation suit. Because we agree with the District Court's reasoning, we affirm.

**I.**

Errington worked as a VICE unit investigator and police academy instructor for the City of Reading Police Department (the "Department"). But workplace drama tainted the last few years of his service. Errington alleges three disputes led to his resignation.

*First*, in November 2017, Officer Charles Menges left Errington's name off the ballot in an election for the Fraternal Order of Police ("FOP") union. Shortly after Errington complained about this snub, Chief Richard Tornielli removed him from his instructor position at the police academy.

*Second*, in October 2019, Errington believed that Menges was committing misconduct in his role as FOP President. Errington filed a complaint with the Pennsylvania FOP about Menges's misconduct, which triggered a formal investigation. Following it, the Pennsylvania FOP recommended that Menges be suspended from the union. A month later, Chief Tornielli wrote Errington up for an unspecified discipline infraction but withdrew the charge when Errington confronted him.

*Third*, in March 2020, Chief Tornielli promoted Menges to Sergeant over Errington. Errington complained to other VICE unit members about how the promotion was unfair because, unlike Errington, Menges had not taken the promotional test and was not on the promotion list.

2

Errington thought the promotion of Menges was a "belligerent display of power [that] highlighted [Tornielli's] immoral and unethical behavior." JA 68. Lieutenant Eric Driesbach found out Errington had spoken poorly about Tornielli, Menges, and the latter's promotion. He alleged that Errington's complaints violated the Department's Direct Order 1, which prohibits all VICE unit officers from saying anything that would reflect negatively on the Department or its members. So Driesbach and Tornielli began investigating Errington for a possible violation. Errington's supervisors took his firearm and badge and placed him on paid administrative duty during the investigation. In April 2020, Errington was informed that Tornielli was going to have him fired. Tornielli's initial reason for the termination was Errington's lying during an internal investigation, but later Tornielli changed his rationale to harassment.

Between April and June 2020, Errington weighed his options, including fighting his termination or retiring before the termination went through. During this time, he consulted his FOP representative and the human resources department. He ultimately decided not to fight because his pension had recently vested, and he did not want to risk losing it while pursuing an appeal. Errington thus retired in June 2020.

Following retirement, Errington sued Tornielli, Driesbach, and Menges for retaliation in violation of the First Amendment under 42 U.S.C. § 1983. He then filed two more versions of his complaint, but the Court dismissed his operative Second Amended Complaint with prejudice. Errington timely appeals to us.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction to review the District Court's final order under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of a Rule 12(b)(6) motion to dismiss. *Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*, 34 F.4th 190, 195 (3d Cir. 2022). "We accept the complaint's factual allegations as true and construe these allegations in the light most favorable to the plaintiffs." *Id.* (citation omitted).

## II.

To state a claim, Errington must allege that (1) he engaged in protected speech, (2) the Department took an adverse employment action against him, and (3) the speech was a substantial or motivating factor in the alleged retaliatory action. *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015). The District Court properly dismissed Errington's complaint because he did not sufficiently plead that the Department took an adverse employment action against him.

A voluntary retirement is not an adverse employment action. *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999). Retirements are presumed voluntary unless they are caused by coercion, duress, or deception. *Id.* at 227-28. We apply an objective standard and ask whether a reasonable person under the circumstances would "have felt compelled to resign." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010) (citation omitted). We consider a non-exhaustive list of factors to evaluate whether a retirement is a constructive discharge, including (1) whether the employee was given an alternative to resignation; (2) did he understand his choice; (3) whether he had a reasonable amount of time to decide; (4) whether he could select the effective date of the resignation; and (5) did he have the opportunity to gain the advice of counsel. *Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125-26 (3d Cir. 2018).

We agree with the District Court that Errington failed to plead constructive discharge and rebut the presumption that his resignation was voluntary. His complaint shows he was given options either to challenge his termination or to retire with his pension; he understood those options; and he had months to decide which option to choose. Though the complaint does not indicate whether Errington consulted counsel, he consulted both his union representative and

human resources department about the choice.  He did not plead conditions so unpleasant that a reasonable person would feel forced to resign.[2]

Because Errington did not sufficiently allege one of the necessary elements for pleading a First Amendment retaliation claim, we need not consider the remaining issues he raises on appeal.[3]

*        *        *

We thus affirm the judgment of the District Court.

---

[2] Nor does Errington plead any other cognizable adverse employment action.  For example, while failure to receive a promotion can constitute an adverse employment action in the right circumstances, *see Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998), Errington alleges no connection here between his being passed over for promotion to Sergeant and his complaints to his superiors.

[3] Even if we were to consider those arguments, Errington also did not engage in protected speech.  Government employees do so when they discuss items of public importance, not internal workplace drama.  *Munroe*, 805 F.3d at 467 ("[S]peech that relates solely to mundane employment grievances does not implicate a matter of public concern." (citation omitted)).  The District Court correctly explained why each alleged instance of speech was not a public concern. JA 46-49.  We cannot consider Errington's argument that Direct Order 1 is unconstitutionally broad because he forfeited that argument by not raising it in the District Court.